**UNITED STATES of America**

v.

**James J. GANNON, Stephen W. Parker, William Rocci, Anthony Marzullo, John Tortorella, Domenic Tortorella, Frank Sirignano.**

**Crim. Nos. 61–164 to 61–166.**

United States District Court
D. Massachusetts.

Dec. 27, 1961.

Edward I. Masterman, Boston, Mass., for James J. Gannon.

George J. Leary, Boston, Mass., for Anthony Marzullo.

Daniel F. Leary, Boston, Mass., for Domenic Tortorella.

Francis Juggins, Boston, Mass., for Frank Sirignano.

John J. Walsh, Jr., Boston, Mass., for Stephen W. Parker and William Rocci.

WYZANSKI, District Judge.

There are before me 27 motions filed by seven defendants. Most of these motions purport to be pursuant to Rule 41 (e) of the Rules of Criminal Procedure, 18 U.S.C. All involve implicitly United States Constitution Amendment IV.

1. James J. Gannon makes two motions in Criminal 61–164, 61–165, and 61–166 to suppress, as evidence against him (1) property seized October 17, 1960 at 350–352 Ocean Avenue, Revere, and (2) property seized February 27, 1961 at 584 Beach Street, Revere.

2. Anthony Marzullo makes three motions, one each in cases 61–164, 61–165, and 61–166. Each motion seeks (1) to recover property seized October 17, 1960 and February 27, 1961, from his possession and his automobile, and (2) to suppress certain statements.

3. Stephen W. Parker makes two motions filed in Criminal 61–164, 61–165, and 61–166, to suppress as evidence against him (1) property seized October 17, 1960 at 350–352 Ocean Avenue, Revere, and (2) property seized on February 27, 1961 at 584 Beach Street, Revere; and three motions, filed respectively in 61–164, 61–165, and 61–166 seeking (1) to recover property seized October 17, 1960 and February 27, 1961, and (2) to suppress certain statements.

4. William Rocci has filed five motions corresponding to those of Parker.

5. Frank Sirignano has filed six motions, two each in cases 61–164, 61–165, and 61–166. These motions seek (1) to recover property seized October 17, 1960 and February 27, 1961, and (2) to suppress certain statements.

Paul J. Redmond, Asst. U. S. Atty., Boston, Mass., for plaintiff.

James W. Kelleher, Boston, Mass., for John Tortorella.

6. Domenic Tortorella has filed three motions, one each in cases 61–164, 61–165, and 61–166. These motions correspond to those of Sirignano.

7. John Tortorella has filed three motions, one each in cases 61–164, 61–165, and 61–166. These motions also correspond to those of Sirignano.

These cases grow out of two separate raids on two alleged bookie joints. One raid was at 350–352 Ocean Avenue, Revere on October 17, 1960. The other was at 584 Beach Street, Revere, on February 27, 1961. What was seized in each case were gambling paraphernalia on the premises, in automobiles near the premises, and the contents of those automobiles. In each case preceding the raid, pursuant to Rule 41(c) of the Rules of Criminal Procedure, a Special Agent of the Bureau of Internal Revenue made an affidavit before a United States Commissioner; the Commissioner issued a search warrant "to any U. S. Marshal, any of his deputies, or any authorized person" specifying the gambling material and like property on the premises to be seized; deputy marshals and Special Agents together made the raids and seized property from the premises and Special Agents seized the automobiles and contents; and in the first raid a deputy marshal made the return, and in the second raid a Special Agent made the return. Thereafter, the grand jury, presumably responding, in part, to the evidence so procured, indicted the seven defendants in one or more of the three indictments numbered, respectively, 61–164, 61–165, and 61–166.

The broad issues raised are (1) whether, in accordance with Rule 41(c) of the Rules of Criminal Procedure, proper persons *executed* the search warrants to procure the gambling material on the premises, and (2) whether, absent warrants to search the automobiles as distinguished from the premises, proper foundations existed for the seizure of those vehicles and contents. Despite the wide sweep of the oral arguments and briefs, the Court has not before it any motion which asks specifically for return of the automobiles themselves as distinguished from all "property" said to have been wrongfully seized, or any motion or evidence clearly stating who was the owner, possessor, or custodian of any particular automobile.

At a hearing on December 11, 1961, this Court received evidence. Upon the record thus made this Court finds:

1. From August 17, 1960 to October 17, 1960, John J. Daley, a Special Agent of the Bureau of Internal Revenue, and others had made observations, on about 18 separate occasions, at 350–352 Ocean Avenue, Revere. Daley had seen the defendants, severally, arriving in automobiles, many of which were registered in their respective names, and taking from the cars into the premises packages of envelopes. Before October 17, Daley observed some of the defendants removing some of these envelopes and some "slips" from under the seats of the cars.

2. Fred G. Pastore, another Special Agent, on October 17, 1960 made a minutely detailed affidavit before U. S. Commissioner Nelligan reciting his own 27 observations and observations of others, apparently including Daley. The Commissioner, expressly relying on Pastore's affidavit, directed, "to any U. S. Marshal, any of his deputies, or any other authorized person" a warrant to search for and seize at 350–352 Ocean Avenue, Revere, specific material commonly used for registering bets. On the same day, Special Agents Pastore, Daley, DeLuca and one or more United States deputy marshals together entered the premises and seized the articles listed.

3. Pastore directed special agents to seize and search the cars parked around the premises at 350–352 Ocean Avenue. The cars and the property in the cars were seized by the Special Agents. The defendants, after they had been arrested by deputy U. S. marshals who were acting on specific warrants of arrest, turned their auto keys over to the Special Agents.

4. October 26, 1960 deputy United States marshal F. J. Oczkowski made to

the U. S. Commissioner a return of his execution of the search warrant. Thereafter the property covered in his return remained with the United States Marshal. Presumably the cars and contents were taken into the custody of the Internal Revenue Service.

5. From February 7, 1961 to February 27, 1961 John J. Daley had made observations, on seven separate occasions at 584 Beach Street, Revere. Here, too, Daley had seen the defendants arriving severally, in automobiles, many of which were registered in their respective names, and, on days before the February 27 raid, taking from the cars into the premises packages of envelopes.

6. Fred G. Pastore on February 27, 1961 made a minutely detailed affidavit before U. S. Commissioner Farrell reciting his own eight observations and the observations of others, apparently including Daley. The Commissioner, expressly relying on Pastore's affidavit, directed "to any U. S. Marshal, any of his deputies, or any authorized person" a warrant to search for, and seize at, 584 Beach Street, Revere, specific material commonly used for registering bets. On the same day Pastore, Daley, other Special Agents, and deputy marshals jointly entered the premises, and seized the articles listed.

7. Pastore directed Special Agents to seize and search the cars parked in the driveway of, and the streets around, 584 Beach Street. The cars and the property in the cars were seized by the Special Agents. The defendants, after they had been arrested by deputy marshals who were acting on specific warrants of arrest, turned their auto keys over to the Special Agents.

8. March 7, 1961 Special Agent Daley made to the U. S. Commissioner a statement that he had executed the search warrant. His return recited the presence of two other Special Agents, who themselves also signed the return. Thereafter the property covered in the return and the cars and their contents remained in the possession of the Intelligence Division of the Bureau of Internal Revenue.

■ Upon the facts found, the first question is whether, so far as concerns the gambling material within 350–352 Ocean Avenue, there was, under the provisions of 18 U.S.C. § 3105 and Rule 41(d) of the Rules of Criminal Procedure, a valid *execution* of the search warrant issued October 17, 1960. This question is easily answered on unassailable authority. The basic search and seizure statute, 18 U.S.C. § 3105, provides that "a search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant." See also Rule 41(c) of the Rules of Criminal Procedure. Thus two categories of persons have standing to execute: (1) those mentioned in the warrant, and, additionally, (2) those officers authorized by law. Deputy Marshal Oczkowski plainly falls in the first category, at the least. Though he was not mentioned by name, the warrant was directed to "deputies" of the U. S. Marshal, of which he was one. That generic description suffices. Gandreau v. United States, 1st Cir., 300 F. 21, 25; United States v. Clancy, 7th Cir., 276 F.2d 617, 624, 629, reversed on another point, Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574.

The second question is whether those Special Agents who seized the cars at 350–352 Ocean Avenue were authorized so to do without a warrant for the seizure of such vehicles. Five distinctions deserve notice.

First, the auto seizures were made by Special Agents, not by deputy marshals. The Special Agents themselves did not have, nor purport to execute, warrants for the arrest of any person. Nor were the Special Agents under the direction or charge of the deputy marshals who did make the arrests. Thus there is no occasion here to consider whether those who, pursuant to warrants, arrested the defendants, might have had the further right to make a seizure of the autos as incidental to the arrest of the individuals.

cf. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. See Sir Patrick Devlin, The Criminal Prosecution in England, pp. 63–64.

■ Second, there is no evidence that at the time they were seized the autos were in use as devices for carrying on gambling. At an earlier date, when the seats in the autos were being used as places for storing envelopes and slips, the cars were BOOKIE-MOBILES. But on the day of seizure, so far as appears, the cars were no more instruments of crime than the suits worn by the defendants which on earlier days may have had slips tucked in their pockets. The cars were, for aught the record shows, as innocently used for transportation of individuals as are the buses in which less affluent persons ride to work.

■ Third, as stated in the findings, the autos which were seized had been used previously as instruments of crime, that is as BOOKIE-MOBILES. But after that usage, there had been ample time to procure warrants to seize and search those cars, or to file libels for their forfeiture and to secure process based thereon. It follows that there is no occasion for dispensing with the usual standards for compliance with the Fourth Amendment, and with the statutory and common law, or for relying on exceptions which are recognized by the Constitution, the statutes, and the common law. See the explanation of Carroll v. United States, 267 U.S. 132, 48 S.Ct. 280, 69 L.Ed. 543 given by Justice Frankfurter, dissenting, in United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653.

Fourth, the fact that the cars had previously been used as BOOKIE-MOBILES made them, and no doubt still makes them, subject to forfeiture under 26 U.S.C. § 7302. That is, the cars were in precisely the same vulnerable status as gambling machines or wagering record books. This means that they could have been, and probably still can be, seized, either upon process issued after libel duly filed, or upon any valid warrant, including an administrative warrant formally issued, upon reasonable cause, "by the Secretary or his delegate." 26 U.S.C. § 7321. But, without judicial process following a libel or a judicial or administrative warrant, and without the necessity of immediate seizure to prevent the escape of a moving vehicle caught, as it were, *flagrante delicto*, the Special Agents had no authority to seize the vehicles or their contents in the way they did.

■ Fifth, the fact that, after the cars had already been seized, and the defendants had already been arrested, some of them turned over their auto keys to the Special Agents does not make the car seizures valid, retrospectively or prospectively. Surrender of the keys was under duress, United States v. Festa, D.Mass., 192 F.Supp. 160.

On the record before me, defendants failed to show with clarity which individuals owned or possessed which cars. But those who are the owners, or who have the sort of possession requisite for the old action of trover, are entitled to have a return of their cars, and of whatever they can show were contents of those cars. If there is a dispute about the application of this last sentence, any interested person may apply to this Court for specific relief. So far as concerns the use of these cars and their contents in evidence at a plenary trial, there is no need now to make a formal order. If the government should seek to use this evidence or clues derived therefrom, there will be opportunity at the trial to hear any objecting defendant, who has the necessary standing to be heard. See Rule 41(e) of the Rules of Criminal Procedure.

The third main question is whether, so far as concerns the gambling material within 584 Beach Street, there was, under the provisions of 18 U.S.C. § 3105 and Rule 41(d) of the Rules of Criminal Procedure, a valid *execution* of the search warrant issued February 27, 1961.

Here the vital distinction from the October 17, 1960 seizure at 350–352 Ocean Street is that the seizure was made not by a deputy marshal but by a Special

Agent. Special Agents as a narrow class were not specified in the direction of the warrant as they were in United States v. Clancy, 7th Cir., 276 F.2d 617, 624, 629. And the argument pressed on me is that the broad class "officer authorized by law to serve such warrant", a phrase found in 18 U.S.C. § 3105, does not mean any officer who could have been validly specified by the Commissioner, but means only any officer who has by statute, rule, or like source the spelled-out authority to execute a search warrant.

Were the second of these alternatives the correct one, then, so far as I am apprized, a Special Agent would not be able to bring himself within that alternative. For no statute specifically gives Special Agents an explicit power to execute search warrants in all cases. Thus, for instance, the Government would not here be aided by The Excise Technical Changes Act of 1958, Act of September 2, 1958, Pub.Law 85–859, 72 Stat. 1275, 1430, inserting § 7608 into the Internal Revenue Act of 1954, 26 U.S.C. § 7608. That statute relates to execution of warrants for enforcement of taxes on alcohol, machine guns, and other items *not* including gambling materials.

▆▆ But the second alternative is not the correct method of construing the direction in the search warrant. The direction is intended to authorize execution by anyone whom the Commissioner could by specific designation have directed or allowed to execute the search warrants. And it is settled that the Commissioner could have designated Special Agents. United States v. Clancy, 7th Cir., 276 F.2d 617, 624.

▆ Nothing in the history of search warrants, or the policy of the common law, or the traditions of constitutional liberty militates against the construction just given. Of course, that history, that policy, and those traditions demand that a search warrant shall be specific in designating what is to be seized, where, from whom, and on what grounds. See the stream of cases flowing from Erskine's eloquence in Entick v. Carrington, (1765), 19 St. 1029. The under-

lying principle is that the man whose property is in peril has a right to know precisely what is wanted and on what basis the demand is made. But he could not care less what official is the Court's or Commissioner's "messenger", (See 10 Holdsworth, History of English Law, pp. 670–671), provided that the messenger be a genuine one acting under the normal discipline of public office.

The sole reason why the "messenger" is often named in the search warrant and the sole reason why Rule 41(c) of the Rules of Criminal Procedure provides that "the warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States", is the same reason that the proposed arresting officer is named in a warrant of arrest. When a Commissioner's warrant names a particular officer to undertake the duty of making a search or an arrest, the Court can validly punish him if he does not execute his duty as he is bound to do. See 4 Blackstone, Commentaries, *288. In view of the use in Rule 41(c) of the auxiliary verb "shall", the Rule directs the Commissioner to state the official who is to act under penalty of punishment. But the Commissioner's failure to follow this directory provision is not of consequence to any private person, whose interest could not be adversely affected. So far as the private person is concerned, all that the Commissioner *must* do is to state why the property is being seized, what it is, and where it is. Support for this conclusion may be found, by way of analogy in the way the ever-careful F. W. Maitland described a warrant of arrest, in his classic volume, Justice and The Police, (1885) pp. 121–122:

"The warrant *must* state the substance of the charge, and *must* name or describe the person to be arrested, and *will* order some constable, or other person named in it, or generally the constables of the area over which the magistrate's commission extends, to apprehend the accused." (Emphasis added).

Furthermore, it may be noted that if the person whose property is seized wishes, he can always demand from the person executing the search warrant proof that that person is, as he claims, an official, and hence authorized to serve. Moreover, after execution, the executant is compelled to file a return. This return is not merely for his own protection but also for the purpose of informing the public and the Commissioner and the man whose property is taken what was seized and who did it.

To guard against misapprehension, this Court should add that it has *not* rested the validity of the seizures of gambling material at 584 Beach Street upon the presence of the U. S. deputy marshals. Those marshals were not in charge of the Special Agents. And the material seized by the Special Agents was not given to the U. S. Marshal but was held by the Internal Revenue Service.

The fourth question raised by the motions is whether those Special Agents who seized the cars at 584 Beach Street were authorized so to do without a warrant for the seizure of such vehicles. This question is the precise parallel of the second question, and is answered the same way.

A fifth question is raised by the motions but not by the evidence. The motions refer to statements alleged to have been made by one or more of the defendants. Demand is made that they be suppressed. Since, however, this Court was given no evidence about such statements, it has no occasion to consider any relief with respect to them.

In summary, all the motions are denied, but insofar as defendants can bring within the answers given above to the second and fourth questions their claims to cars and their contents, further specific motions will be entertained, (if the Government does not voluntarily comply with this opinion); evidence on the motions will be taken; and appropriate restitutional and protective orders will be entered.