457 F.2d 63
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Davis KENNEDY, also known as Carl Wayne Thomas,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy Joe MARTIN, also known as William Todd, also known as
Billy Joe Todd, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John KLINER, Defendant-Appellant.
 Nos. 71-1226 to 71-1228.
 United States Court of Appeals,
Tenth Circuit.
 March 30, 1972.
 
 Daniel M. Burke, Casper, Wyo., for defendants-appellants.
 Jack Speight, Asst. U. S. Atty. (Richard V. Thomas, U. S. Atty., and Tosh Suyematsu, Asst. U. S. Atty., with him on brief), for plaintiff-appellee.
 Before MURRAH, SETH and HOLLOWAY, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 This case poses the question whether the poison of an illegal arrest and detention contaminates evidence discovered during the detention under color of a legally issued search warrant. The evidence in question, a sawed-off shotgun, was admitted at the trial of appellants, William Davis Kennedy, Billy Joe Martin, and John Kliner, resulting in convictions for violations of federal firearms regulations. The main argument on appeal is that the trial court's refusal to suppress the evidence requires a reversal of the convictions. We disagree with appellants' contentions, concluding that the shotgun was properly admitted as evidence and that the judgments of conviction must be affirmed.
 
 
 2
 On the morning of October 23, 1970, the appellants and their companion, Mrs. Tamaline Blewett, were arrested by the Sheriff of Lincoln County, Wyoming, Max Braegger, and Undersheriff Dale Dana. The arrest was made pursuant to law enforcement bulletins from Idaho County, Idaho. The teletyped bulletins described the automobile which the subjects were driving and advised that they were in possession of a sawed-off shotgun and burglar tools. It also stated that a warrant for the arrest of Kennedy, Martin, and Mrs. Blewett on charges of first degree burglary had been issued by a Probate Judge of Idaho County.
 
 
 3
 After their arrest the appellants and Mrs. Blewett were taken to the Lincoln County Courthouse in Kemmerer, Wyoming, and placed in the county jail by Sheriff Braegger.[1] The automobile they were driving was parked near the court-house and locked. Sheriff Braegger then set about confirming the existence of the Idaho arrest warrant mentioned in the teletype messages. In response to Sheriff Braegger's inquiries the Idaho County Attorney, Roger Swanstrom, and Idaho County Sheriff, Gene Fuzell, arrived in Kemmerer on the day following the arrest and presented the Idaho arrest warrant before the Lincoln County Justice of the Peace. Swanstrom also executed two affidavits before the Justice of the Peace, wherein he stated that he had been notified by a reliable informant that Kennedy, Martin, and Mrs. Blewett had committed certain burglaries and that they had concealed a sawed-off shotgun, burglar tools, and certain proceeds from the burglaries in their automobile. The affidavits also set forth specific facts, tending to corroborate the informant's reliability, which Swanstrom claimed to have discovered in the course of his own investigation. On the basis of information contained in these affidavits, the Justice of the Peace issued a warrant ordering Sheriff Braegger to search the appellants' automobile. Since Sheriff Braegger was out of town the search was conducted by Undersheriff Dana, with the assistance of Swanstrom and Fuzell, approximately thirty-four hours after the initial arrest. Among the items discovered was an unregistered and illegally made sawed-off shotgun. After returning to Kemmerer, Sheriff Braegger signed an inventory of the property taken from the automobile and the inventory was attached to a return of the search warrant which Undersheriff Dana filed with the issuing Justice of the Peace on October 28.
 
 
 4
 Thereafter, a Federal Grand Jury indicted Kennedy, Martin, and Kliner[2] on three counts: (I) possessing a firearm made without the payment of a making tax in violation of 26 U.S.C. Secs. 5861(c) and 5871; (II) possessing an unregistered firearm in violation of 26 U.S.C. Secs. 5861(d) and 5871; and, (III) transporting an unregistered firearm in interstate commerce in violation of 26 U.S.C. Secs. 5861(j) and 5871.
 
 
 5
 Prior to trial appellants filed a motion to suppress the shotgun as evidence. At a hearing on this motion the appellants claimed that the Idaho warrant for their arrest was improperly issued because of an insufficient showing of probable cause in the affidavits supporting it. It was argued that, as a result of this defect in the Idaho warrant, the arrest and detention of the appellants by the Wyoming officers was illegal, thus tainting any subsequently discovered evidence. The trial judge overruled both this pretrial motion and objections to admission of the shotgun made during the trial. Upon trial the jury found Kennedy and Martin guilty on all three counts and Kliner guilty on Counts II and III.
 
 
 6
 The appellants contend that Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), decided by the Supreme Court after their trial, calls for application of the exclusionary rule in the circumstances of this case. The facts here are, indeed, similar in some respects to those presented in Whiteley v. Warden, supra. In that case two men were arrested by police in Laramie, Wyoming, pursuant to radio bulletins broadcast by the Sheriff of Carbon County, Wyoming. The bulletins described the men, their automobile, and some stolen items believed to be in the automobile, also stating that an arrest warrant had been issued for the subjects in Carbon County. Immediately upon making the arrest, the Laramie police conducted a warrantless search of the automobile and discovered incriminating items. Although the Carbon County arrest warrant was later held invalid for insufficiency of probable cause, the products of the search were admitted as evidence at the state court trial resulting in Whiteley's conviction. After exhausting his state court remedies, Whiteley brought a federal habeas corpus action alleging that his arrest was illegal and that the failure to suppress evidence discovered incident to that arrest was in violation of his constitutional rights. This Court affirmed the District Court's denial of the petition. The Supreme Court reversed, holding that since Whiteley's arrest was made on the basis of an invalid warrant it was illegal and evidence discovered during the search incident to the illegal arrest should have been excluded.
 
 
 7
 It is clear from the record that the Idaho warrant authorizing the arrest of Kennedy, Martin, and Mrs. Blewett was invalid for the very reasons which caused the Whiteley warrant to be invalidated. For such a warrant to be valid the issuing judicial officer must be presented with sufficient information to support an independent judgment that probable cause for the warrant exists. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). A reading of the criminal complaint which served as the sole basis for issuance of the illegal Idaho warrant leaves no doubt that it "could not support the independent judgment of a disinterested magistrate." Whiteley v. Warden, supra, 401 U.S. at 565, 91 S.Ct. at 1035. In light of Whiteley, the arrest made pursuant to such an invalid warrant was illegal.
 
 
 8
 The fact that the arrest and detention of the appellants was illegal does not, however, necessarily mean that all subsequently acquired evidence should be suppressed. From its inception the "fruit of the poisonous tree" doctrine has been inapplicable when knowledge or possession of the evidence in question was obtained from a source independent of the government's wrongful act. Costello v. United States, 365 U.S. 265, 280, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The standard for determining whether the source of evidence is sufficiently independent of the illegality as to avoid its taint was set forth in Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963): "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."'
 
 
 9
 In Whiteley the excluded evidence was discovered during a search incident to an illegal arrest; it was, thus, unquestionably come at by exploitation of the illegality. The case before us, however, presents a much different situation. The search of the appellants' automobile was conducted pursuant to a valid search warrant[3] issued on the basis of information, the source of which was entirely independent of and unconnected with the illegal arrest. While it might be said that but for appellants' illegal arrest and detention the automobile would not have been available to be searched, Wong Sun explicitly teaches that the evidence in question is not to be excluded simply because there is a "but for" relationship between it and the primary illegality. The independent information which served as a factual basis for issuance of a valid search warrant operated to insulate the evidence seized from the taint of the illegal arrest and detention. In sum, the connection between the illegal arrest and detention and the legal search was "so attenuated as to dissipate the taint." Nardone v. United States, supra, 308 U.S. at 341, 60 S.Ct. at 268.
 
 
 10
 The suppression of the evidence in this case would, moreover, have no deterrent effect upon unlawful or improper police activity. Conceding that deterrence is the major purpose to be served by the exclusionary rule[4] (see Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)), there was no culpability on the part of the law enforcement officers involved tending to justify its application in this case. The illegal arrest and detention of appellants were clearly not directed toward or utilized for the acquisition of incriminating evidence. In such circumstances exclusion of the shotgun would serve no legitimate purpose under the exclusionary rule and we think that it was properly admitted at trial.
 
 
 11
 Appellants also contend that the search warrant was rendered invalid because of improper execution and the failure to make a return on it, thus necessitating the exclusion of evidence seized on its authority. Although the warrant was issued to Max Braegger, as Sheriff of Lincoln County, it was not improper for Undersheriff Dana to conduct the search as Sheriff Braegger's agent and representative. See United States v. Gannon, 201 F.Supp. 68, 73 (D.Mass.1961); United States v. Tolomeo, 52 F.Supp. 737, 738 (W.D.Pa.1943). The fact that Swanstrom and Fuzell assisted in the search is of no consequence since they were at all times acting in the company and under the direction of Undersheriff Dana. See Palmer v. United States, 92 U.S.App.D.C. 103, 203 F.2d 66, 67 (1953); Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353, 355 (1938), cert. denied, Floratos v. United States, 305 U.S. 626, 59 S.Ct. 89, 83 L.Ed. 401; United States v. Joseph, 174 F.Supp. 539, 545 (E.D.Pa.1959), aff'd, 278 F.2d 504, cert. denied, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52.
 
 
 12
 We must also reject appellants' assertion that minor defects in the form and nature of the return filed by Undersheriff Dana are grounds for suppressing the evidence. Neither the parties' briefs nor our research has disclosed a Wyoming case determining the effect of an improper return on a search warrant in that state. This warrant was issued pursuant to Rule 40 of the Wyoming Rules of Criminal Procedure, which is virtually identical with Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C., and similar statutes from several states. The overwhelming weight of authority in these jurisdictions is to the effect that the procedures required for return of a search warrant are ministerial and, absent a showing of prejudice, irregularities in such procedures will not serve to void an otherwise valid search. See, e. g., United States v. McKenzie, 446 F.2d 949, 954 (6th Cir. 1971); United States v. Haskins, 345 F.2d 111, 117 (6th Cir. 1965); United States v. Baldwin, 46 F.R.D. 63, 64 (S.D.N.Y.1969); Mills v. State, 12 Md.App. 449, 279 A.2d 473, 480 (1971); People v. Schmidt, Colo., 473 P.2d 698, 702 (1970); State v. Hunt, 454 S.W.2d 555, 559-560 (Mo.1970), cert. denied, 400 U.S. 942, 91 S.Ct. 239, 27 L.Ed.2d 245.
 
 
 13
 Assuming that there were defects in the return on the search warrant, they were not prejudicial to appellants so as to serve as grounds for excluding evidence discovered during the otherwise valid search.
 
 
 14
 The judgments of conviction are affirmed.
 
 
 
 [1]
 Appellant Kliner was released after approximately one hour since, according to the law enforcement bulletins, no warrant had been issued for his arrest
 
 
 [2]
 Tamaline Blewett was never arrested or charged in connection with any federal violation and testified on behalf of the government at appellants' trial
 
 
 [3]
 The validity of the search warrant has not been attacked on appeal. The reason becomes apparent from an examination of Swanstrom's supporting affidavits which clearly supply facts from which a detached magistrate could ascertain some of the underlying circumstances which led the informant to make the conclusions he did and which prompted Swanstrom to believe the information reliable. See Aguilar v. Texas, supra, 378 U.S. at 114, 84 S.Ct. 1509
 
 
 [4]
 We recognize that some doubts have been expressed as to whether the exclusionary rule operates as an effective deterrent. See e. g., the dissent of Chief Justice Burger in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 411, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and cases and authorities cited in the appendix thereto, at 426-427, 91 S.Ct. 1999