## UNITED STATES v. FOX .
### No. 14197.

United States District Court
E. D. Pennsylvania.
Jan. 31, 1951.

316

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for the plaintiff.

William F. Quinlan, Philadelphia, Pa., for the defendant.

CLARY, District Judge.

Frederick S. Fox and Ralph Beaver Strassburger, treasurer and president respectively of the Norristown Herald, Inc., were jointly indicted for wilfully attempting to defeat and evade income taxes due the United States by filing and causing to be filed false and fraudulent tax returns. The indictment contains two counts, charging the filing of false and fraudulent corporation returns for the years 1941 and 1942 respectively. At about the time the indictment was returned or shortly prior thereto, Ralph Beaver Strassburger left the United States and went to France, where he presently resides. He has never pleaded to the indictment nor been arraigned in the matter. After the case had been continued for several terms of court, the Government moved for a severance and the case went to trial as to defendant Frederick S. Fox only. The jury returned a verdict of guilty on both counts. The matter is now before the Court on defendant Frederick S. Fox' motions for judgment of acquittal, or, in the alternative, for a new trial.

The motion for judgment of acquittal is grounded on the contention that the Government has not established sufficient facts to warrant a verdict of guilty. The facts underlying the entire case are as follows:

Early in 1930 Ralph Beaver Strassburger, owner of all but two qualifying shares of the capital stock of Norristown Herald, Inc., bought 3600 shares of $100 par value preferred stock of the Philadelphia Record for $286,493. About 1936 this stock was sold by Strassburger to Norristown Herald, Inc. for the same price. An examination of the books of the Norristown Herald, Inc. by Agents of the Internal Revenue Bureau in 1943 revealed that of the 3600 shares of preferred stock owned by the Norristown Herald, Inc. 1000 shares had been apparently transferred to Frederick S. Fox on August 31, 1941 at $25.50 per share for his note for $25,500. Again at the close of the fiscal year of 1942, on August 31, 1942 the books recorded a further apparent sale to Fox of 1000 shares at $27.50 per share for his note for $27,500. Both of these transactions involved a substantial

book loss to the corporation and resulted in no taxes being due the United States for corporation taxes for the two years in question, 1941 and 1942. Absent these two sales it is conceded by the defendant that income taxes would have been due the United States for corporate profits for those two years.

The Government contends that both of these sales were fraudulent and made solely for the purpose of defeating and evading income taxes due the United States. The Government introduced testimony of the then managing editor of Norristown Herald, Inc., one Walter A. Wilson, who testified that he had custody and control of the corporate books in which these transactions appeared at the date of and for a period of approximately six weeks after the first transaction of August 31, 1941, and that no such transaction ever occurred at that time or during the succeeding six weeks and was not entered in the corporate books at the time he left early in October of 1941. The Government further showed that Ralph Beaver Strassburger early in 1943 arranged for the sale of the entire block of 3600 shares to J. David Stern, then president and former editor of the Philadelphia Record, for a total price of $165,000. The entire proceeds of the sale, $165,000, went to Ralph Beaver Strassburger for his personal note, later redeemed by surrender to Norristown Herald, Inc. of 1650 shares of its stock. This did not, however, change his percentage of corporate ownership. The Government contended that from these facts and the details and circumstances surrounding the transactions it was a patent attempt to claim a loss from a sale, which in fact never took place, for the purpose of evading payment of income taxes.

On the other hand, defendant Fox strenuously contended that so far as he was concerned, it was a bona fide sale of the stock to him in each instance and that he later changed his mind about the purchase, asked to be relieved of his note obligations, and that the corporation at the time of the sale to Stern did actually relieve him of that obligation. In his testimony before the Special Agent of the Internal Revenue Bureau, Fox testified that the notes were redelivered to him after the sale but due to negligence had not actually been cancelled by the corporation and marked paid. It is conceded by the Government that the book-keeping of the corporation demonstrated an apparent sale on each occasion and that if the sales were bona fide the returns were correct.

The evidence and circumstances surrounding these transactions were such that it required a determination by the jury as to whether these two sales were in fact bona fide or were mere book manipulations made with the intent to claim a loss which actually did not occur and thereby defraud the United States of income taxes. This simple question was submitted to the jury in a charge to which no exception was taken, except one which will be discussed later in this opinion. The actions and intent of the parties had to be gathered from the surrounding circumstances. The jury has found this defendant guilty and in so doing has found that the two transactions involved were not bona fide sales and were entered into for the purpose and with the specific intent of evading and defeating income taxes lawfully due the United States and that the defendant wilfully attempted to defeat and evade payment of taxes by filing and causing to be filed false and fraudulent income tax returns for the Norristown Herald, Inc. Defendant Fox signed both returns as treasurer of the Corporation. That this defendant made no profit in the transaction is of no importance. That he probably did it at the direction of his employer, the sole owner of the corporation, is also no excuse. He was an official of the corporation and as such was under a legal duty to make an honest return for the corporation. There is ample evidence of record which, if believed by the jury, warrants its verdict of guilty and, therefore, the motion for judgment of acquittal must be denied.

Defendant asks me to determine as a matter of law that the Government has not proved sufficient facts to warrant a verdict of guilty. To do this I would be compelled to accept every statement and explanation of defendant as truth and disregard the testimony of the Government and the infer-

ences flowing from the facts adduced by the Government. The apparent sales were made on notes which made no provision for interest and to a man whose financial status was demonstrated to be far from stable. The sales were fortuitously made at the end of the fiscal year and at a time when the loss apparently occasioned relieved the corporation of the payment of income taxes. Yet at the time when the entire block of stock was being sold at a price which would mean a substantial profit to this defendant, he claims that he asked to be relieved of the obligation of his notes and also incidentally of the profit which would have accrued to him at that time. The entire proceeds of the transaction went into the pockets personally of the sole owner of the corporation. If believed by the jury, it would not take much imagination to conclude that these apparent sales were a sham and made solely for the purpose of relieving the corporation of paying income taxes. The intention of the parties in that regard was a question of fact for the jury. By its verdict the jury has determined that fact adversely to the defendant.

As to his motion for a new trial, defendant although assigning many reasons therefor has made in his argument and in his brief three distinct and specific points. First, that the Court erred in refusing one point submitted by the defendant for charge. Second, that certain inadmissible evidence was received to the prejudice of the defendant, and finally, that the defendant was prejudiced by certain remarks of the United States Attorney.

At the conclusion of the entire case, the defendant submitted certain points for charge, nearly all of which were affirmed, but the Court advised defendant's counsel that Point No. 6 would not be affirmed as stated. This point read as follows: "That in the determining of 'did wilfully attempt to defeat and evade the income tax allegedly due' the word 'wilfully' is to be construed more than merely intentional, on the contrary it must be understood to mean that the act was done with a bad or corrupt motive."

The Court covered the point generally and in its opinion adequately in the charge when the following language was used: "The attempt to evade or defeat the tax must be a willful attempt. That is to say, it must be made with the intent to keep from the Government a tax imposed by the income tax laws which it was the duty of the defendant to report to the Government." And further, "If the tax evasion motive plays any part in such conduct, an offense may be made out even though such conduct might serve some other purpose." These statements taken in the general context of the entire charge adequately instructed the jury on the proposition advanced in defendant's Point No. 6. The case cited by the defendant in support of his position, Hargrove v. United States, 5 Cir., 67 F.2d 820, 823, 90 A.L.R. 1276, is not at variance with the charge. In that case, the court instructed the jury—"A man may have no intention to violate the law and yet if he willfully and knowingly does a thing which constitutes a violation of the law he has violated the law." As the Court of Appeals pointed out, that charge failed to distinguish the elements of a crime where the mere doing of the act is denounced, and where the law only denounces as criminal the willful doing. The jury was instructed in this case that it must find an intent on the part of the defendant to wilfully evade the tax and keep from the Government taxes imposed by law. See Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. Under the circumstances, no error was committed in refusing defendant's point as stated.

The second proposition advanced is that the Court erred in admitting into evidence certain bank records of co-defendant Strassburger and a certain letter between the fiscal agents who handled the transfer of the 3600 shares of stock between the seller and the purchaser J. David Stern. Certainly, this evidence was relevant in connection with the activities of co-defendant Strassburger and traced not only the sale but the distribution of the proceeds of the sale into co-defendant Strassburger's personal bank accounts. While the two de-

fendants in this case were not charged with conspiracy, there was sufficient proof of concert of action between the two of them in the commission of the alleged offense to warrant the application of the rule that acts and declarations of one are admissible against the other, even though no conspiracy has been charged. See Lee Dip v. United States, 9 Cir., 92 F.2d 802.

■ The further point is advanced in defendant's argument that the Court permitted the Chief Deputy United States Marshal of this District to testify that his assistants attempted to serve the bench warrant issued after indictment on Strassburger and that he could not be located in the district. The fact that the Chief Deputy testified instead of one or more assistants who actually attempted to serve the co-defendant is of no consequence, in view of the direct admission by counsel for defendant Fox that co-defendant Strassburger, also his client, had been absent from the jurisdiction and in France since the return of the indictment.

The third assignment that the defendant was prejudiced by certain improper remarks of Government counsel is likewise without merit. An examination of the record indicates that the United States Attorney's arguments did not go beyond the bounds of propriety in arguing facts and inferences to be drawn therefrom. Viewed in the light of all the testimony before the jury, I feel that he kept within the bounds of proper legal argument.

■ The final argument advanced to the Court is that a new trial should be granted for the reason that in the argument on defendant's motion for judgment of acquittal at the close of the Government's case, the Court remarked to the United States Attorney that the testimony of the witness, Wilson, was the one thing that gave the Court some concern.

Defendant has seized upon that chance statement as a basis for arguing that except for Wilson's testimony the Court would have granted judgment of acquittal, an assumption entirely unwarranted. It was not the opinion of the Court that Wilson's testimony was the deciding factor in the determination of the motion then before it. That testimony when considered in conjunction with the other evidence in the case left little doubt in the Court's mind of the defendant's guilt.

Counsel for defendant now asks me to disregard in its entirety the testimony of Wilson which he characterizes as "perjury" throughout his brief. He bases the characterization on the fact that Wilson testified that one Wilmer D. Cressman had not been Secretary of the Herald during a certain period whereas some of the Herald's books indicated that Cressman had been elected and acted as Secretary during that period. For that reason, the Court pointed out to defendant's counsel that Cressman's testimony might be of importance to the defense. Although it appeared that Cressman was available and in the district, counsel stated to the Court that he had decided against calling him for fear that he might prove hostile. After the verdict and pending motion for a new trial, he obtained from Cressman an affidavit, general in terms and not specifically refuting the important part of Wilson's testimony, that pertaining to Wilson's personal possession of the corporate minutes and the fact that the entries regarding the alleged resolution to sell stock to Fox in August 1941 was not in the minutes when Wilson left the Corporation on October 7, 1941, some six weeks later. Defendant now asks me to accept this affidavit in lieu of testimony which could have been produced at time of trial, and based on that affidavit to regard Wilson's entire testimony as perjured. Since defendant had every opportunity to obtain Cressman's testimony and deliberately chose not to do so in spite of warning, I do not feel that any further consideration should be given him in that regard. In effect, defendant seeks a second guess regarding trial tactics. That he is not entitled to under the circumstances.

The case was tried with all due regard to the rights of the defendant Fox. The charge of the Court specifically instructed the jury that Fox should not be penalized for Strassburger's alleged wrongdoing un-

less he was knowingly a party to it. The jury has found that he was and I see no reason to interfere with its finding.

For the reasons set forth above, the motions for a new trial and for judgment of acquittal are denied.