UNITED STATES of America

v.

Meyer SIGAL, Abe Rabinovitz, Nathan Granoff and Carl Schrello.

Cr. No. 62-295.

United States District Court
W. D. Pennsylvania.
April 22, 1963.

Samuel J. Reich, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Louis C. Glasso, Pittsburgh, Pa., for defendant, Meyer Sigal.

John R. Gavin, Pittsburgh, Pa., for defendant, Abe Rabinovitz.

MARSH, District Judge.

The defendants, Sigal and Rabinovitz, were convicted after a jury trial of (1) willfully attempting to evade and defeat the excise tax on wagers for the month of November, 1961, 26 U.S.C.A. § 7201; (2) two counts of willful failure to pay the special tax imposed on persons engaged in the business of accepting wagers and in receiving wagers for or on behalf of a person or persons engaged in the business of accepting wagers, 26 U.S.C.A. § 7203; (3) two counts of failure of such persons to register with the District Director of Internal Revenue, 26 U.S.C.A. § 7272 (1962 Supp.); and (4) two counts charging such persons being so engaged and liable to pay the special tax without having paid said tax, 26 U.S. C.A. § 7262.

The defendants filed a timely motion for judgment of acquittal and in the alternative for a new trial.

MOTION FOR JUDGMENT
OF ACQUITTAL

The grounds set forth in this motion are:

"1. The Court erred in refusing defendants' Motion for Suppression of the Evidence.

"2. The Court erred in failing to grant defendants' Motion for Judgment of Acquittal.

"3. The Court erred in failing to grant a mistrial because of the re-

marks of the United States Attorney during the course of the trial and during summation.

"4. The Court erred in its numerous rulings on the evidence with reference to admission of certain exhibits and restriction of cross-examination of Government's witnesses."

In my opinion the motion should be denied.

The first, third, and fourth grounds are repeated in the Motion for a New Trial and will be considered under that heading.

■ Since the jury has brought in verdicts of guilty, the evidence is to be viewed together with all inferences reasonably and logically deducible therefrom in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Minker, 312 F.2d 632, 635 (3d Cir. 1962); United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959).

■ In so viewing the evidence and the reasonable inferences, I think the defendants were properly convicted.[1]

The Government produced abundant direct and circumstantial evidence to enable the jury to find beyond a reasonable doubt (1) that a group of persons including the defendants were associated together as members of a partnership[2] engaged in the business of accepting and receiving wagers; (2) that this business in the form of a numbers operation was conducted in the Hill District of Pittsburgh; (3) that the business had a headquarters at Whitey's Restaurant where numbers slips and wagered money were turned in and payments made, and had a

station at 1808 Locust Street where the numbers slips were tabulated.[3]

There was evidence that Rabinovitz and Sigal wrote some numbers and accepted wagers during both indictment periods. It was undisputed that both had failed to register or pay the special tax for the indictment periods.

Almost daily in May and June, 1961, and from the middle of September to November 21, 1961, Sigal, Rabinovitz, and Granoff, who was acquitted, were observed by undercover agents in Whitey's Restaurant[4] engaging in activity that could hardly be found to be other than a large numbers operation. Numbers slips and money were delivered to the defendants by numbers writers and "pick-up" men. The slips were separated from the wagered money and placed in a bag; the defendants placed the money in their pockets. On occasion Sigal received slips and money from writers and "pick-up" men. On occasion after Rabinovitz and Granoff had received slips and wagered money, they were observed giving money to Sigal. Prima facie the wagered money that went into his pocket belonged to him, and the circumstances disclosing his receipt thereof are enlightening links in the chain of evidence which points to Sigal as one of the owners or proprietors of the lottery. He did not as an individual file a return or pay the excise tax on the wagers he received in November, 1961.

From other evidence it could have been found that Sigal, an admitted gambler, was the spokesman for the venture, making statements which unmistakably characterized him as the manager of the operation. Several of his incriminating declarations were not specifically denied by him. Rabinovitz was present when

---

1. The defendants, Schrello and Granoff, were extremely fortunate in being acquitted by the jury, especially Schrello, who admitted being the owner of the lottery operation.

2. As defined in § 7701(a) (2), 26 U.S.C.A.

3. There was evidence from which it could be inferred that the slips were delivered to addresses which shifted frequently be-

tween 5125 Liberty Avenue and 1724 Wightman Street and ultimately to 1808 Locust Street.

4. Sigal admitted being a habitue of Whitey's, being there practically every morning and frequently in the afternoon, where he was observed by his witnesses, i. e., the police and others.

these declarations were made. The inference was strong that Sigal and Rabinovitz were associated together in the operation. Although Sigal took the stand and denied that he was in the numbers business, the jury did not believe him.

The defendants Sigal and Granoff branded Rabinovitz as a numbers writer; his counsel admitted he was such. Rabinovitz did not take the stand to deny it. In addition, there was no evidence as to what he did with the wagered money he put into his pockets at Whitey's. Prima facie it belonged to him; the jury could have concluded he was an owner.

In the excise tax return (Ex. 13), Rabinovitz represented that he was the "owner" of the enterprise at 1808 Locust Street. See also, Exs. 20, 22. In the raid of November 21, 1961, numbers slips representing approximately $20,000 were seized at 1808 Locust Street which bore such unmistakable similarities to the slips seized in the raid on Whitey's the day before that the jury could hardly have been expected to find other than that the two locations were used in the same numbers operation.

The majority of the slips seized covered three days in November, i. e., the 18th, 20th, and 21st, and all the slips seized amounted to $20,511.18, on which excise tax of $2,051.12 was due but only $365.00 was declared and paid by Rabinovitz (Ex. 13).

Since the daily average for three business days was in excess of $6,000, the jury could have inferred that the wagers received by the owners of the lottery during the first 20 days of November were considerably in excess of $20,000, on which excise tax was due and unpaid. Since Rabinovitz and Sigal were observed operating the illegal business at Whitey's during that part of November, as well as prior thereto, the jury was warranted in finding that they were among the owners of the lottery who failed to pay the excise tax due for November.

The efforts to conceal the place where the slips were tabulated and the turn-in station;[5] the failure to pay the special tax; the failure to register; the use of code names in order to mask the names of writers; the false and fraudulent excise tax return filed by Rabinovitz in the amount of $365.00 for November as as "owner" with address at "1808 Locust St Pgh Pa",[6] when during November—up to the 20th—he was observed almost daily at Whitey's receiving wagers; Sigal's evident apprehension of federal agents contrasted with his lack of apprehension at the presence in Whitey's of local police; the separation of slips from the wagered money; and the surreptitious nature of the operation of the lottery by those prima facie in control; comprised sufficient evidence of affirmative acts of willfulness and criminal intent to evade and defeat payment of the excise tax and the special tax. In my opinion the criteria laid down in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, was met by the evidence.

Under the evidence the jury was fully warranted in refusing to give credence to the endeavor of Rabinovitz to assume sole responsibility as "owner" of the lottery (Ex. 13). Schrello when arrested tried to do the same, and he was acquitted. It is not unusual in such a business for one of the participants when apprehended to attempt "to take the rap". Cf. Commonwealth v. Manuszak, 155 Pa. Super. 309, 38 A.2d 355.

## MOTION FOR NEW TRIAL

Defendants Sigal and Rabinovitz moved for a new trial which in my opinion should also be denied. The reasons

---

5. For several days after an alarm the operation moved from Whitey's to a garage across the street.

6. The quoted words appear in Ex. 13 which was signed by Rabinovitz. See also Ex.

20 where Rabinovitz stated that his "Address: Business" was "1808 Locust Street, Pittsburgh 19, Allegheny County, Pennsylvania". To the same effect, see Ex. 22.

assigned as error in support of the motion are as follows:

■ 1. In refusing defendants' motion for suppression of evidence.

A motion, pursuant to Rule 41(e), Fed. R.Crim.P., presented by Sigal, Rabinovitz, and Granoff to suppress evidence seized on November 20, 1961, by virtue of a search warrant issued for Whitey's Restaurant was denied after hearing. See opinion reported in United States v. $1,058.00 In United States Currency, 210 F.Supp. 45 (W.D.Pa.1962). An appeal is pending.[7] No motion pursuant to Rule 41(e) was made prior to trial to suppress the evidence seized on November 21, 1961, by virtue of a search warrant issued for 1808 Locust Street. All defendants had ample time to make this motion prior to trial as required by the Rule. Nonetheless, the court entertained the motion to suppress the seized evidence made during the trial and denied it when upon examination it appeared that a proper search warrant was issued upon an affidavit showing probable cause. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. $1,058.00 In United States Currency, supra.

2. In failing to grant defendants' motion for judgment of acquittal.

This motion was denied for the reasons set forth herein under the heading Motion for Judgment of Acquittal.

■ 3. In failing to grant a mistrial because of remarks made by the United States Attorney.

This reason is without merit. The remarks made in summation, which might be interpreted as prejudicial if taken out of context, were made in reply to, if not provoked by, argument made on behalf of defendants. The motions, made at the close of the Government's argument, to withdraw a juror because of improper remarks were considered and denied at that time. We think they were properly denied. Cf. United States v. Sober, 281 F.2d 244 (3d Cir. 1960).

4. In its numerous rulings on the evidence with reference to admission of certain exhibits and restricting cross-examination.

■ The objections to evidence and admission of exhibits were fully argued during the trial and the reasons for the rulings will appear in the transcript. No alleged error which would require a new trial was particularized at oral argument with reference to any of those rulings. During the trial the jury was given limiting instructions as to certain exhibits; and, in the charge, as to declarations and acts of one defendant made in the absence of other defendants. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 366–367, 83 S.Ct. 448, 9 L.Ed.2d 357. Of course, where, as here, there was independent evidence that the defendants were engaged in a "concert of action", the declarations and acts of one defendant are admissible against the others when said or done in furtherance of the enterprise. Fuentes v. United States, 283 F.2d 537, 539 (9th Cir. 1960); United States v. Olweiss, 138 F.2d 798 (2d Cir. 1943); United States v. Fox, 95 F.Supp. 315 (E.D.Pa.1951). Thus, Sigal's oral declarations made in the presence of Rabinovitz could have been used by the jury against Rabinovitz, and Rabinovitz's excise tax return (Ex. 13) and his receipt of slips and wagered money during November could have been used as evidence against Sigal in connection with the numbers operation for that month at Whitey's and at 1808 Locust Street. No exceptions were taken to the charge in this respect.

At oral argument no complaint was made that the cross-examination of any Government witness was unduly restricted except as to Agent Robert J. Madden. The restrictions there imposed were clearly justified as being beyond the scope of the direct examination,[8] as hav-

---

7. The money and checks taken from the person of these defendants, by virtue of the warrants of arrest, were not offered in evidence at the trial.

8. Wills v. Russell, 100 U.S. 621, 625–626, 25 L.Ed. 607; Meyer v. Aetna Life Ins. Co., 126 F.2d 141, 143 (3d Cir. 1942); cf. United States v. Stoehr, 196 F.2d

ing no relevant or material bearing on the facts of the case, and as not being within the purview of the Jencks Act, 18 U.S.C.A. § 3500.[9]

An appropriate order will be entered.

### ORDER OF COURT

And now, to-wit, this 9th day of April, 1963, after oral argument and upon due consideration, It Is Ordered that the defendants' motion for a new trial and judgment of acquittal be and the same hereby is denied.

The United States Attorney is directed to produce the defendants, Meyer Sigal and Abe Rabinovitz, for sentencing on Monday, April 22, 1963, at 10:00 A.M.

276, 280–281, 33 A.L.R.2d 836 (3d Cir. 1952), cert. denied 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643.

9. The final report of Agent Madden contained in Ex. 1000, which was impounded for inspection by appellate courts, was denied to defendants on the ground that the material therein did not relate to the "direct testimony" of the witness. Killian v. United States, 368 U.S. 231, 242–243, 82 S.Ct. 302, 7 L.Ed.2d 256.