UNITED STATES of America

v.

James MURPHY and Robi Mercer, Appellants.

No. 13424.

United States Court of Appeals Third Circuit.

Argued Feb. 24, 1961.

Decided May 19, 1961.

sult of a search allegedly made in violation of the Constitution.

Appellant Mercer and one Zilka were arrested by agents of the Treasury Department at a railroad siding where sugar was being unloaded from a boxcar into a tractor-trailer. The agents searched Mercer and the tractor-trailer and seized the following property: four hundred bags of sugar, one hand truck, one dock ramp, the tractor-trailer, and currency that was on Mercer's person. Murphy, the other appellant, voluntarily surrendered a few days after these arrests. The agents did not have warrants to make the arrests or conduct the searches.

After waiving a hearing before a Commissioner on a complaint charging them with possession of sugar and other property in violation of 26 U.S.C. § 5686(a),[1] a misdemeanor, appellants were held over to await action of the grand jury. Thereafter, while on bail and before indictment, appellants filed a motion under Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., in the district court to suppress the use of the seized property as evidence and to order its return, alleging that it was seized in violation of the Constitution. The motion was denied and this appeal followed.

During argument on the merits, this court, *sua sponte*, raised the question of the appealability of the order, i. e., was it a final decision under 28 U.S.C. § 1291. Appellants contend that the order is final because the motion was filed before an indictment was returned. The government contends, however, that the order is interlocutory on the ground that the primary purpose of the motion was to suppress use of the property as evidence, and that its return is only sought incidentally. We think that our prior holdings in United States v. Bianco, 3 Cir., 1951, 189 F.2d 716, and In re Sana Laboratories, Inc., 3 Cir., 1940, 115 F.2d

Albert Martin, Pittsburgh, Pa. (Charles J. Maloney, Pittsburgh, Pa., on the brief), for appellants.

Hubert I. Teitelbaum, U. S. Atty. and Ralph F. Scalera, Asst. U. S. Atty., Pittsburgh, Pa., on the brief, for appellee.

Before KALODNER, STALEY and FORMAN, Circuit Judges.

STALEY, Circuit Judge.

This appeal requires us to determine both the appealability and correctness of a district court's order refusing to suppress the use of property as evidence and to direct its return, where such property was seized by arresting agents as the re-

---

1. "(a) General. It shall be unlawful to have or to possess any liquor or property intended for use in violating any provision of this chapter or regulations issued pursuant thereto, or which has been so used, and every person so having or possessing or using such liquor or property, shall be fined not more than $5,000, or imprisoned not more than 1 year, or both." 26 U.S.C. § 5686(a).

717, certiorari denied Sana Laboratories, Inc. v. United States, 1941, 312 U.S. 688, 61 S.Ct. 615, 85 L.Ed. 1125, support appellants' position and are binding on us.[2]

Appellants and the government recognize, as indeed they must, that the legality of the search and seizure depends upon the validity of the arrests. The appellants contend that the arrests were unlawful because, as they say, the arresting agents did not have probable cause to believe that a misdemeanor was being committed in their presence. The government contends, and the district court found, that probable cause existed.

■ The authority of the arresting agents is contained in 26 U.S.C. § 7608, which reads as follows:

"Authority of internal revenue enforcement officers.

"Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary or his delegate charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of Subtitle E or any other law of the United States * * * may—

\* \* \* \* \* \*

"(3) in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence * * *."

Enacted in 1958, this provision was not meant to change or in any way limit the then existing authority of internal revenue agents to make arrests or conduct searches as an incident thereto.[3]

■■ The Court made it clear in Carroll v. United States, 1925, 267 U.S. 132, 156–157, 45 S.Ct. 280, 69 L.Ed. 543, that an officer can make an arrest without first securing a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence.[4] Probable cause does not require, as the Supreme Court has so frequently said, that the arresting officers have evidence to establish criminal guilt. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. On the other hand, a mere inkling or suspicion is not enough. United States v. Walker, 7 Cir., 1957, 246 F.2d 519. "Probable cause," Justice Douglas said in Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." We turn, then, to determining whether the arresting officers here knew and saw enough at the time of the arrests to permit them, as prudent men, to believe that a misdemeanor was being com-

2. The writer of this opinion has serious doubts as to the correctness of these decisions, for he thinks that "criminal proceedings" were commenced, as that term is used in Cogen v. United States, 1929, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275, so as to make the order interlocutory and not appealable once the appellants were brought before the Commissioner, and it was not necessary that they first be indicted. This same conclusion was reached in Zacarias v. United States, 5 Cir., 1958, 261 F.2d 416, certiorari denied 1959, 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 637. In denying certiorari in Zacarias, the Supreme Court cited Carroll v. United States, 1957, 354 U.S. 394, 77 S.Ct. 332, 1 L.Ed.2d 1442. In Carroll it was said, 354 U.S. at page 403, 77 S.Ct. at page 1338, that "The instances in criminal cases are very few" where an order denying a motion to suppress evidence will be considered final. The holding in Zacarias was recently followed in Saba v. United States, 5 Cir., 1960, 282 F.2d 255, petition for certiorari filed, 29 U.S.L. Week 3213 (U.S. Jan. 10, 1961) (No. 643), and Saba v. United States, 5 Cir., 1960, 283 F.2d 244. For a collection of authorities, see Annotation, 156 A.L.R. 1207 (1945).

3. 3 U.S.Code Cong. & Ad.News, 85th Cong., 2d Sess., 1958, pp. 4395, 4605.

4. Even before Carroll, the court in Garske v. United States, 8 Cir., 1924, 1 F.2d 620, 622, said: "It is the well-established doctrine now throughout the United States that for a crime, which they have reasonable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant."

mitted in their presence. Based on the uncontradicted facts in the record, we think that the answer is yes.

On August 26, 1960, Jennis, an investigator for the Alcohol and Tobacco Tax Unit of the Treasury Department, took a position from which he observed a boxcar, containing sugar, that was standing on a railroad siding in Forestville, Pennsylvania. The shipment was consigned to the "Murphy Products Company, Harrisville, Pa. (Sub Zilka Flour Co.)", meaning, thereby, that the Zilka Flour Company, as subconsignee, was to be notified upon arrival of the boxcar at the siding.

From his position, Jennis on August 27 observed a tractor-trailer coming north on Route 8 and then pull into a railroad siding on the right side of the roadway. Though he came over to the vehicle which bore North Carolina license plates, Jennis was unable to identify the driver who in the meantime had lain down in the sleeper of the tractor-trailer.

While keeping the tractor-trailer under observation, Jennis saw and recognized Bernard Zilka of the Zilka Flour Company in Monessen, Pennsylvania, dismount from an automobile that pulled into the railroad siding. After talking to a man at the boxcar, which he examined, Zilka departed from the scene only to return in about an hour accompanied by Mercer.

A group of men then commenced to unload sugar from the boxcar into the tractor-trailer that Jennis had earlier seen. Together with fellow agents, Jennis drove up to the unloading operation where he saw and, from a photograph that had previously been supplied to him, recognized Mercer in the cab of the tractor-trailer. At this time, Jennis, based on information that he had received from other agents, knew that Mercer had been arrested by Treasury agents at 3:00 A.M. sometime in May, 1960, on a country road in North Carolina while unloading three hundred and forty-eight bags of sugar from a truck. A receipt for this sugar, issued by the Zilka Flour Company, was found in Mercer's pocket

at that time. Also, Mercer had a reputation for being one of the "largest sugar distributors to bootleggers in the State of North Carolina," and owned a business known as the Mercer Milling Company, described as a fictitious enterprise, and located in an area of considerable illicit distilling activity. Jennis also knew that both the Mercer Milling Company and the Zilka Flour Company had to make daily reports to the Treasury Department concerning the particulars of their individual sugar transactions. This procedure is used where it is suspected that sugar is being diverted for illegal purposes. Mercer was arrested and searched. Jennis proceeded to the boxcar where he arrested Zilka who was unloading the sugar. Immediately after these arrests, the property heretofore mentioned was seized.

■ This chain of events, together with the knowledge that the arresting agents had of Mercer's activities, fully substantiates the existence of probable cause. We are not reluctant to say that the agents would have been derelict had they not acted when they did.

This case is similar in all essential respects to Draper v. United States, 1957, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, where narcotics agents had received information from a paid informer that Draper, an alleged narcotics peddler, would arrive in Denver from Chicago while having heroin in his possesion. The informer gave the agents Draper's physical description and said that he would be carrying a tan zipper bag and that he usually walked "fast." On the basis of this information, agents arrested Draper as he alighted from a Chicago train. Here, and we think this case is even stronger, Jennis had previously seen a picture of Mercer and was well acquainted with his general reputation and prior arrest, based on information that he had received from other agents of the Treasury Department. Also, the agents here did in fact see the sugar being unloaded, while in Draper there is no reason to think that the agents saw the heroin.

Because of our conclusion that probable cause existed, we need not concern ourselves with appellants' contention that a misdemeanor was not committed. We have fully considered the other questions appellants raise and find no error.

The order of the district court will be affirmed.