### UNITED STATES of America
#### v.
### Peter N. JUVELIS, Joseph P. Maugere and Joseph M. Rodriguez.
#### Crim. A. No. 158–59.

United States District Court
D. New Jersey.

June 7, 1961.

On Rehearing June 20, 1961.

746

Chester A. Weidenburner, U. S. Atty., Daniel E. Isles, Asst. U. S. Atty., Newark, N. J., for the government.

Peter N. Perretti, Jr., Newark, N. J., for petitioner Rodriguez.

C. Robert Sarcone, Newark, N. J., for petitioner Juvelis.

MEANEY, District Judge.

Defendants Rodriguez and Juvelis have moved to suppress the use at trial of certain items which were allegedly the subject of an illegal search and seizure. The issue is whether there was probable cause for the arrest leading to the search which produced the items sought to be suppressed.

The episode in question began about 10 P. M. on the night of February 26, 1959, when Rodriguez was invited to accompany Juvelis and Maugere on a trip to Florida. Shortly thereafter they departed in Maugere's car, heading south from Newark on the New Jersey Turnpike. They left the Turnpike and proceeded to the Delaware Memorial Bridge which connects New Jersey and Delaware. As they pulled up to the toll booth on the Delaware side of the Delaware Memorial Bridge, they were ordered out of the car at gunpoint by two or three members of the Delaware State Police. They were "frisked" for concealed weapons and were then led to the Bridge administration building. As they were being led away from the car, one of the Delaware policemen searched the car. Inside the building a further search of their persons was conducted. The searches yielded presumably incriminating evidence which is the subject of this motion.

■ Initially, the court observes that Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, has eliminated the necessity for considering the extent of federal participation in a search by state officers. That case holds that evidence seized in an unreasonable search by state officers is to be excluded from a federal criminal trial.

The evidence on the issue of probable cause consists of the following testimony by one of the Delaware officers who participated in the arrest and searches:

"While on routine patrol, we happened to stop by the New Jersey Turnpike tollgates, and we were talking to one of the toll collectors over there, Mr. Holman, and he told us that the information concerning this particular car, and securities that were supposedly to be in the car, or on their persons, had come over the

teletype, or police radio, from Jersey. He gave us full information on the type of car, license number, amount of occupants in the car, and amount of particulars of what we should find in that car or their persons. Approximately four—between four and four-twenty in the morning, we were called by Public Service, by this same person from the toll booth over at the New Jersey Turnpike, and he told us that the car had just left the Turnpike heading south.

"We were under the belief—we had no idea when this robbery was committed or anything else. We were told they were armed; so being as somebody told us they were armed, we take precautions. So we unloaded them out of the car with guns."

■■ The court is of the opinion that probable cause for the arrest existed. Though the information of the arresting officer was obtained in an indirect manner, and though its ultimate source does not appear from the evidence, it was received through official channels available only to law-enforcement officers. The information he received was complete, positive, and, in effect, directed or requested him to make the arrest. When, as here, we deal with "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (Brinegar v. United States, 1949, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L.Ed. 1879) it seems clear that the facts and circumstances warranted a prudent man in believing that an offense had been or was being committed. United States v. Murphy, 3 Cir., 290 F.2d 573.

The court has weighed the danger of allowing arrest and seizure to be validated by the device of using official law-enforcement communication channels to transmit the information relied upon by the arresting officers against the necessities of effective law enforcement. Under the circumstances of this case, the latter must prevail.

The motion is denied.
Submit an order.

## On Rehearing

This matter was argued before the late Judge Morrill and the opinion heretofore filed by this court was determined on the basis of his notes and the memoranda submitted to him. On application of defense attorneys the matter was re-argued before this court.

■ At the rehearing stress was placed on the decision of the Court of Appeals of the Third Circuit in a considered opinion by Judge Hastie in the case of United States v. Bianco, 189 F. 2d 716, 719. In that opinion Judge Hastie, referring to action taken by a Federal Bureau of Investigation agent on telephoned information from a fellow agent, said, "The agent who relies on the summary assertions of his coagent can acquire therefrom no greater authority than could have been exercised by the coagent had he been in the arresting agent's position. *A telephone message cannot immunize irresponsible investigation.*" (Emphasis added). There is a weighty distinction from that situation in the present case which to this court serves to remove the action of the police officer from the status of "irresponsible investigation." The word he received was no mere telephone call from a fellow officer. It was a communication sent through official channels that a crime had been committed with detailed identification of the alleged criminals, with the further statement that they were armed. Failure on his part to take summary action under such circumstances would have amounted to sheer lunatic neglect of duty as well as non-feasance. The indicated action implied as a consequence the necessity for search and seizure. Any other course would be but a meaningless gesture. The whole matter must rest on whether or not the cir-

**748**

cumstances of which the officer had reasonably trustworthy information were sufficient in themselves to warrant belief by a man of reasonable caution that a crime is being committed. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

■ A reasonable corollary of this doctrine is such a belief that a crime has been committed. The Constitution does not forbid search; it forbids only unreasonable search, U.S.Const. Amend. 4, as Chief Justice Taft said in Carroll v. United States, supra.

To say that under conditions such as they existed in this case the search and seizure were unreasonable, would result in at least partial paralysis of activities in pursuit of felons.

Further, it would seem doctrinaire to urge that although it would constitute non-feasance on the part of the officer to fail to arrest and search the defendants, it would be improper to allow the results of the legitimate arrest and search to be used in the trial of those defendants. Insistently the court repeats that it is aware of the dangers which could result from misuse and prostitution of the means of obviating what might be termed an initial illegal search. But each case must be decided on its own facts.

It does not seem to this court that the protection granted by the Bill of Rights against unreasonable search and seizure has been trespassed upon unwarrantably or in any culpable degree by the acts of the police officer. They seem to have been taken justifiably on probable cause.

Repeating what it said in the last part of its original opinion about weighing the conflicting dangers inherent in the present situation, the court feels that by the action of the officer "the innocent man is not injured and the guilty person is not wronged."

Let the order stand.