UNITED STATES of America,
Appellee,

v.

Meyer SIGAL, Appellant.

UNITED STATES of America,

v.

Abe RABINOVITZ, Appellant.

Nos. 14475, 14476.

United States Court of Appeals
Third Circuit.

Argued May 5, 1964.

Decided Feb. 11, 1965.

Rehearings Denied March 9, 1965.

Biggs, Chief Judge, dissented in part.

838

Michael von Moschzisker and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa. (Thomas D. McBride, Philadelphia, Pa., Louis Glasso, Pittsburgh, Pa., and Herbert Yanowitz, Philadelphia, Pa., on the brief), for appellant in No. 14,475.

John R. Gavin, Pittsburgh, Pa., for appellant in 144,476.

Samuel J. Reich, Asst. U. S. Atty., Pittsburgh, Pa., Alfred N. King, Atty., Criminal Div., U. S. Dept. of Justice, Washington, D. C. (Gustave Diamond, U. S. Atty., on the brief), for appellee in both cases.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

After a jury trial appellants were convicted under 26 U.S.C. §§ 7201, 7272 and 7262 for various violations of the provisions of the Internal Revenue Code relating to wagering, i. e. Wilful attempt to evade special tax; Wilful failure to pay special tax; Wilful failure to register for special tax; Failure to register for special tax; Failure to pay special tax.

On behalf of Sigal it is asserted that the searches and seizures involved were illegal; that the numbers slips could not constitutionally be received as evidence; that the agents had no authority to arrest without a warrant; that there should have been a mistrial because of remarks by the prosecuting attorney in his closing argument; that the first count was improperly submitted to the jury. Appellant Rabinovitz urges that the prosecution's proof of partnership failed as to Count One of the indictment and that he is entitled to a new trial because of the above referred to remarks of the prosecutor in closing.

None of the above points is meritorious. They are covered in the concurrence. They need no discussion in this opinion.

Appellant Sigal also contends that the judgment should be reversed because the court reporter failed to record the voir dire examination of prospective jurors. This point also in the view of the majority is specious. However, the dissent would remand the causes to the district court " * * * to supplement the record, note 37, supra [not necessary to quote here], in order to determine whether or not there was an effective waiver by either or both of the defendants." In view of this we will present the factual and legal situation governing that particular problem.

The court stenographer should have recorded the voir dire in accordance with the pertinent statute, 28 U.S.C. § 753(b). The failure to do so in this instance was harmless error. There is no contention otherwise. The record is barren of any support for such contention if it had been made. Sigal merely notes the point in two paragraphs and does not reply in his reply brief to the specific and authoritative disposal of the point by appellee. Rabinovitz does not even list the point in his appeal. Sigal states the statutory provision is mandatory and cites two decisions. Parrot v. United States, 314 F.2d 46 (10 Cir.1963) and Stephens v. United States, 289 F.2d 308 (5 Cir.1961). The dissent also refers to these. Both those cases require more than a mere violation of the Act for reversal. In Parrot the judge told the jury that the defendant, being tried for conspiracy to rob a bank, *had three other bank robbery charges pending against him.* With no record of the voir dire the appellate court was unable to ascertain if the error was harmless, therefore remanded the appeal for a new trial. In Stephens the appeal was unable to present certain specific errors on appeal because the voir dire had not been stenographically recorded. The later Fifth Circuit Court of Appeals opinion in

Strauss v. United States, 311 F.2d 926 (5 Cir.1963), cert. den. 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963), gives a clear picture of the basic law on the question. The same suggestion was made there as in the instant appeal, i. e. because the law was mandatory, despite the fact that no specific error was charged, there should be a reversal. The court said p. 933:

"Furthermore, no specific error or prejudice resulting therefrom is called to our attention. This is the very least that would be required under Stephens v. United States, 5 Cir., 1961, 289 F.2d 308, where errors were specified, and where there was no record on which to test the claimed errors. To permit an appellant simply to claim error for failure to record under the Act, without more, would eliminate the necessity of a showing of prejudice because of the error."

In another late and important opinion of the Fifth Circuit Court of Appeals on this subject, Addison v. United States, 317 F.2d 808, 811 (5 Cir.1963), cert. den. 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964), the court held:

"There is no excuse for the court reporter's failure to comply with the requirements of the statute, *unless the party waives the requirement. However, this does not work an automatic reversal.*" (Emphasis supplied).

In Brown v. United States, 314 F.2d 293, 295 (9 Cir.1963), relied upon as supporting the defense position, there was failure to record the summations as called for by the statute. The court categorically disagreed with the proposition that the failure of itself required reversal. It remanded the appeal to ascertain the fact holding that "In reviewing criminal convictions on appeal we are to disregard 'error * * * which does not affect substantial rights.' Rule 52(a), Federal Rules of Criminal Procedure. If the closing arguments of counsel contained no error affecting appellant's substantial rights, then failure to record those arguments would also be harmless error." In this appeal, admittedly there was no harm great or small to appellants.

Finally, we are confronted with the view that Hardy v. United States, 375 U.S. 277, 282, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) calls for the naked reversal of these convictions on the *harmless error* of the reporter in this trial failing to take the voir dire. Under that theory the realities that the voir dire contained no error at all, that none was ever contended for, even alleged, would be swept aside. Rule 52(a) F.R.Crim.P. commanding that on appeal "Any error, defect, irregularity or variance which does not affect substantial rights be disregarded", would be abandoned. The issue in Hardy was the necessity of furnishing court appointed counsel for appellant in the Court of Appeals with " * * * a transcript of the testimony and evidence presented by the defendant and also the court's charge to the jury, as well as the testimony and evidence presented by the prosecution." And that was what the Court concluded appellant should have. This was allowed to a new court appointed attorney representing appellant. The voir dire testimony was excluded from the necessary transcript to be given appellant. If there had been any problem relating to it, it of course would have been included. In the present appeal we have no issue as to the voir dire, we have continuity of counsel,[1] we have the exact Hardy decision as it stands, indirectly lending its impressive weight to the sound doctrine that the bare mistake of the stenographer with no damage possibly or probably flowing therefrom, is not enough to deny affirmance to these convictions.

In addition to the above sound doctrine calling for affirmance of these convictions, there was an effective waiving of the necessity of the court reporter noting the voir dire. This was in writ-

---

1. Louis C. Glasso, attorney of record for Sigal from the beginning in this matter is still attorney of record. Additional counsel have been added on appeal. John R. Gavin, original attorney for Rabinovitz is also still his attorney of record.

ing signed by all defendants and witnessed by their counsel. This reads:

"STATEMENT OF SATISFACTION AS TO THE PROCEDURE APPLIED TO THE SELECTING OF JURY

"I do hereby waive the right to have the jury in this criminal proceeding selected in the presence of a member of the Court. I do hereby further state and certify that the jury was selected in the open assignment room of the Court and that I was present with my counsel during the whole of the period of time applied in the selection of the jury. I do further certify that I am satisfied and agreeable to the procedure applied to the selection of the jury.

> Meyer Sigal
> Abe Rabinovitz
> Nathan Granoff
> Carl Schrello
>      (Signatures of Defendants)
Attest:
John R. Gavin
M. Barney Cohen
Louis C. Glasso
      (Attorneys for Defendants)"

The statement on its face approved all phases of the selection of the particular jury with which we are concerned. It was executed after the event. It certified to the presence of the defendants and their lawyers throughout the critical period. It certified satisfaction with the "procedure applied to the selection of the jury." It has never been repudiated. It never could be repudiated in conscience. It would be simply bad faith quibbling to avoid mentioning that at the time of this trial the practice was not to report a voir dire without incident. The dissent goes so far as to say that "It is customary for a court reporter not to be present." Certainly all this was known to the defense lawyers, the original attorneys of record for these appellants, both of them solidly grounded in the practice of the district court who could not and have not pretended that the "Statement" meant other than full acceptance of the procedure followed at this trial which included the nonrecording of the voir dire. In substance, if the plain, clear statement before us was to be twisted into something never contemplated by the defendants or their attorneys it would be a callous, wrongful maneuver which would in these appeals defeat justice.

The judgments of the district court will be affirmed.

BIGGS, Chief Judge (concurring in part and dissenting in part).

The unanimous views of the court are expressed under the first four headings of this opinion, "I", "II", "III", and "IV". A dissent is expressed by the writer under heading "V", that dissent being based upon the failure to record the voir dire examination of the jury.

The defendants-appellants, Sigal and Rabinovitz, with two other individuals, indicted jointly, were convicted, after a jury trial, of wilfully violating provisions relating to wagering of the Internal Revenue Code of 1954, 26 U.S.C., specifically, (Count I), of an attempt to evade the 10% wagering excise tax imposed by Section 4401 in violation of Section 7201; (Counts II and III, respectively) of engaging in the business of wagering during the periods of March 15, 1961 to June 30, 1961 and of July 1, 1961 to November 22, 1961, without paying the special occupational tax imposed by Section 4411, in violation of Section 7203; (Counts IV and V, respectively) of failing to register as gamblers as required by Section 4412 in violation of Section 7272; and (Counts VI and VII, respectively) of failing to pay the special occupational tax imposed by Section 4411 in violation of Section 7262. The defendants were convicted on all seven counts.

The evidence discloses that for a period of time prior to November 20, 1961, agents of the Internal Revenue Bureau assigned to the Intelligence Division had under surveillance a public restaurant located in Pittsburgh known as Whitey's. The agents had reason to suspect that these premises were being used as the

center for a numbers gambling enterprise and their investigations gave them probable cause to believe that their suspicions were correct. The agents' investigation also brought to light the fact that certain premises, known as 1808 Locust Street, also were being used in connection with the gambling enterprise. On November 17, 1961, Special Agent Madden secured search warrants from a United States Commissioner for the search of the two premises. The search of Whitey's was accomplished on November 20, 1961 and of 1808 Locust Street on November 21. The search resulted in the seizure of numbers slips and other gambling paraphernalia and during the course of the search at Whitey's certain incriminating and damaging statements were made by one of the defendants which were overheard by the agents. An arrest warrant was issued for the arrest of the defendant-appellant, Sigal, which was served by the agents of the Intelligence Division of the Bureau of Internal Revenue.

## I

### THE POWER OF INTERNAL REVENUE AGENTS OF THE INTELLIGENCE DIVISION TO EXECUTE SEARCH WARRANTS AND ARREST WARRANTS.

We will deal first with Sigal's contentions or contentions affecting Sigal individually and not affecting the appellant Rabinovitz in any particular. We are concerned first with two search warrants, one issued for a search of Whitey's and the other for a search of 1808 Locust Street. There was only one arrest warrant issued and that one was for the arrest of Sigal. Sigal asserts there were highly prejudicial errors in the issuance and execution of the search warrants and alleges that consequently the searches and seizures were invalid under the Fourth Amendment. There is a question as to Sigal's standing to object to the validity of the searches and seizures, but since the United States concedes him the right to raise this issue, for the pur-

poses of this case, we will endeavor to resolve the point as hereinafter appears. Our determination renders it unnecessary to pass on the legal issue of Sigal's standing.

Sigal contends that the evidence seized was improperly admitted because the agents of the Bureau of Internal Revenue had no power to execute search warrants or arrest warrants. All the evidence in dispute on this aspect of the case was obtained through the searches and seizures. Material gathered from the persons of the defendants, taken by the agents incidental to the arrests, was not, by agreement of the parties, put in evidence in these proceedings. It follows that if the searches were valid, the evidence here in dispute was admissible and we need not and do not reach the issue as to whether there was power in the agents to arrest and search any individual as an incident to arrest.

Sigal's contention is that Intelligence Division agents of the Bureau of Internal Revenue had no power to execute a search warrant at the critical times, as indicated, in November 1961. The point is based on the interpretation of a series of statutory changes made pursuant to the promulgation of the Internal Revenue Code of 1954 and its amendments. The provisions of Section 3462 of the Revised Statutes, explicitly authorizing searches by revenue agents such as those whose authority is questioned in the case at bar,[1] were carried forward into Section 3602 of the 1939 Code, to aid in the enforcement of the National Prohibition Act, 42 Stat. 222. However, the 1954 Code omitted the provisions referred to and Sigal contends that the general repealer section of the 1954 Code [2] specifically repealed the authority to execute search warrants conferred by Section 3602. He asserts next that absent such specific statutory authority there is no power in agents of the Bureau of Internal Revenue to execute search warrants. Sigal further contends that the authority of such agents to execute a search war-

---

1. See Steele v. United States, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761 (1925).

2. 26 U.S.C. § 7851(a) (7).

rant, specifically reinstated by statute in 1962,[3] further evidences the fact that specific authority was deemed by Congress to be necessary. This contention, says Sigal, is in turn buttressed by the fact that specific statutory authorizations have been given to particular federal officers to execute search warrants. Admittedly, there was no statute specifically authorizing agents of the Internal Revenue Bureau to execute search warrants in November 1961.

Every decision of a federal court in which this issue has been raised that we have been able to find has held that such agents did have the power to execute search warrants prior to the grant of specific statutory authority in 1962.[4] We may state preliminarily that our decision in United States v. $1058.00 in United States Currency,[5] involving these same parties, is not controlling since this court expressly did not reach the question presented here for adjudication. The United States asserts that the decision in United States v. Joseph [6] is binding on this court on the issue presented, but we cannot agree. In the Joseph case the defendant argued that there had been an implied repeal of a revenue agent's authority to execute a search warrant. The district court held that there was no such repeal and we agreed. The contention in the case at bar, however, is that the repeal was express and not by implication. For this reason we find the Joseph decision inapposite.

The fact that there was subsequent specific statutory authorization does not prohibit the conclusion that the agents of the Intelligence Division had authority to execute search warrants even prior to the authorization contained in 26 U.S.C. § 7608. As this court said in United States v. Murphy,[7] Section 7608 "was not meant to change or in any way limit the then existing authority of internal revenue agents to make arrests or conduct searches as an incident thereto." Although this statement was made in the context of an inquiry into the power of such agents to make an arrest, what we said is equally applicable to the power to conduct a search. The statute was "intended to clarify the authority of internal revenue officers who are charged by the Secretary or his delegate with the duty of enforcing any of the criminal or forfeiture provisions * * *."[8] The language contained in the pertinent legislative history that "The authority of internal revenue officers to make searches and seizures without warrant under certain circumstances is well recognized, and it is not intended that this section be construed as limiting any such existing authority."[9] does not detract from this analysis. Clearly, the statement quoted was intended to apply solely to those situations in which revenue agents legally can search and seize evidence without a warrant [10] in order to make clear a specific authorization to procure search warrants did not in any way in-

3. 26 U.S.C. § 7608(b).

4. United States v. Pasha, 332 F.2d 193, 196 (7 Cir.), cert. denied, 85 S.Ct. 75 (1964); United States v. Clancy, 276 F. 2d 617, 629, (7 Cir. 1960), rev'd on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L. Ed.2d 574 (1961); Alioto v. United States, 216 F.Supp. 48, 52 (E.D.Wis. 1963); United States v. Gannon, 201 F. Supp. 68 (D.Mass.1961); United States v. $1058.00 in United States Currency, 210 F.Supp. 45 (W.D.Pa.1962), aff'd on other grounds, 323 F.2d 211 (3 Cir. 1963); United States v. Joseph, 174 F. Supp. 539 (E.D.Pa.1959), aff'd per curiam, 278 F.2d 504 (3 Cir.), cert. den., 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960).

5. 323 F.2d 211 (3 Cir. 1963).

6. 174 F.Supp. 539 (E.D.Pa.1959), aff'd per curiam, 278 F.2d 504 (3 Cir.), cert. denied, 364 U.S. 823, 81 S.Ct. 59 (1960).

7. 290 F.2d 573, 575 (3 Cir. 1961), vacated, 369 U.S. 402, 82 S.Ct. 852, 7 L. Ed.2d 840 (1962).

8. 3 U.S.Code, Cong. & Ad.News, pp. 4395, 4604, 85th Cong., 2nd Sess. (1958).

9. Id., at 4605.

10. See, e.g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (search of a moving vehicle without a warrant); United States v. $1058.-00 in United States Currency, 323 F.2d 211 (3 Cir. 1963) (contraband illegally

validate the power to search without a warrant where the law permitted such a course.

■ Section 3105, Title 18 U.S.C., provides that, "A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution." [11] It cannot be successfully contended here that the individual who was directed by the search warrant to execute it did not do so. In this case the search warrant was directed to Agent Madden and he served it. The statute referred to, however, confers no substantive authority to execute a warrant, but was intended to enlarge the common law rule that a search warrant must be directed to a particular person and executed by that person.[12] The substantive authority is to be found in the Federal Rules of Criminal Procedure. Rule 41(c), Title 18, provides that, "The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." Steele v. United States, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761 (1935), is inapposite here. In that case the question presented was whether a Prohibition Agent was an officer within the meaning of the statute, since such an agent was not an officer of the United States in the constitutional sense. The Supreme Court held that it was the legis-

lative intent to include these agents as officers, especially since it would be inconsistent with their duties and powers, which included the specific power to execute search warrants, not to include them.

■ Did the provisions of Section 3105 and Rule 41(c), read together, authorize Agent Madden to execute the search warrants? If he was authorized to enforce or assist in enforcing the laws here involved, then the warrants properly were directed to him and he could serve them lawfully. We think it is clear that Intelligence Division agents were so authorized. The Secretary of the Treasury had and has the power to enforce the tax laws,[13] and this power was and is delegable.[14] The Secretary's power has been properly delegated to the Commissioner of Internal Revenue,[15] and legally re-delegated by the latter to agents of the Intelligence Division.[16]

Sigal attempts to rebut this conclusion by arguing by analogy to the requirement of specific authority necessary to execute arrest warrants.[17] This analogy, however, is not persuasive.[18] The provisions of Rule 41(c), relating to search warrants, in which the requirement is only that the officer be "authorized to enforce or assist in enforcing any law" of the United States may usefully be compared with the more rigid provisions of Rule 4(a) and 4(c) dealing with an arrest warrant which require that the officer be authorized by law "to execute it".

There is nothing in Rule 41 that provides that the officer must be authorized

---

seized need not be returned to the defendant).

11. No issue arises under the last two clauses of Section 3105, Title 18 U.S.C.

12. Leonard v. United States, 6 F.2d 353, 355 (1 Cir. 1925); Perry v. United States, 14 F.2d 88 (9 Cir. 1926); see United States v. Clancy, 276 F.2d 617, 629 (7 Cir. 1960), rev'd on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); United States v. Gannon, 201 F. Supp. 68 (D.Mass.1961).

13. 26 U.S.C. § 7801.

14. 26 U.S.C. § 7803.

15. 17 Fed.Reg. 4590 (1952).

16. 21 Fed.Reg. 10432 (1956).

17. See, e.g., United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Viale, 312 F.2d 595 (2 Cir. 1963), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); United States v. Festa, 192 F. Supp. 160, 163 (D.Mass.1960) (dictum).

18. Compare United States v. Festa, 192 F.Supp. 160, 163 (D.Mass.1960) (Wyzanski, J.) with United States v. Gannon, 201 F.Supp. 68 (D.Mass.1961) (Wyzanski, J.).

by law to execute a search warrant.[19] It is clear that under the pertinent sections of the Internal Revenue Code,[20] Rule 41 supplies the test for determining the validity of service of a search warrant. Accordingly, in the case at bar we hold that the Intelligence Division agents of the Bureau of Internal Revenue had the authority to execute the search warrants under Rule 41(c) and 18 U.S.C. § 3105.

In view of the fact that we have found that the search warrants were legally executed any issues respecting the validity of the arrest warrant or of the admissibility of any material seized, allegedly as incidental to the arrest, disappear from the case. See the second paragraph under this heading, "I", supra.

## II

WAS THE GAMBLING PARAPHERNALIA AN INSTRUMENTALITY OF THE ILLEGAL GAMBLING ACTIVITY AND THEREFORE SUBJECT TO LAWFUL SEIZURE?

■■ Sigal argues that even if the search warrants were legally executed, the evidence still must be suppressed because the search for gambling paraphernalia was purely an evidentiary search and therefore the material seized could not constitutionally be objects of search and seizure. Here again, we are concerned with the Fourth Amendment. In order for a search and seizure to be valid, the search cannot be solely for the purpose of securing evidence to be used as proof that a crime has been committed.[21] It is constitutionally permissible, however, to search for the means or instrumentalities relating to the commission of a crime.[22] Courts of the United States have long struggled with the problem of when the search was merely an evidentiary one and when the object of the search concerned the instrumentalities by which the crime was committed.[23] Each case must turn on an analysis of the facts involved. In a case such as this, Mr. Justice Frankfurter's observation that, "It is true also of journeys in the law that the place you reach depends on the direction you are taking. And so, where one comes out on a case depends on where one goes in." [24] is especially pertinent. If, as Sigal argues, the only unlawful activity is the failure to pay the tax, then it is difficult to see how gambling paraphernalia is the instrumentality of the crime. If, on the other hand, the unlawful activity was the engaging in an unlawful business, as the government contends, then the numbers slips and other gambling paraphernalia were clearly the means by which the unlawful activity was carried on. But nonetheless, as Sigal points out, gambling per se is not an illegal activity under federal law.

■ The crucial link supporting the government's contention is 26 U.S.C. § 4901, which provides that, "No person shall be engaged in or carry on any trade or business subject to the tax imposed by Section 4411 (wagering) * * *

19. It is true that in the alternative under 18 U.S.C.A. § 3105, a search warrant can be served by one authorized by law to serve it. It is not necessary, in this case, to reach the question of whether this authorization must be specific because the service in this case was made by an officer mentioned in the warrant's direction.

20. 26 U.S.C. §§ 7609(b), 7302.

21. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

22. Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Boyd v. United States, note 21, supra.

23. See, e.g., Abel v. United States, 362 U.S. 217, 80 S.Ct. 683 (1960); United States v. Lefkowitz, 285 U.S. 452, 52 S. Ct. 420, 76 L.Ed. 877 (1932); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647 (1921); United States v. Boyette, 299 F.2d 92 (4 Cir.), cert. denied, 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848 (1962); Takahashi v. United States, 143 F.2d 118 (9 Cir. 1944).

24. United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950) (Frankfurter, J. dissenting).

until he has paid the special tax therefor." Thus, payment of the occupational tax is a condition precedent to the lawful engagement in the business of wagering under the federal law. Until that tax is paid, it is illegal, under federal law, to engage in the business of wagering.

■■ In order to validate the search, the fact that Sigal was subsequently convicted of failing to pay the tax is irrelevant. The time at which the warrants were issued is critical. In the affidavit signed by Agent Madden to obtain the search warrants, probable cause for believing that the occupational tax had not been paid was clearly shown because he affirmed that he had personally checked the records of the district director and found that no wagering occupational stamp had been issued to Sigal. Therefore, the search was lawful and we follow those cases holding that gambling paraphernalia is the proper object of a search warrant, where the occupational tax for wagering has not been paid.[25]

We hold, therefore, that the gambling paraphernalia was the instrumentality of the illegal activity and the search and seizure of this material was legal.

## III

### SUMMATION BY THE PROSECUTOR.

■ Both defendants-appellants, Sigal and Rabinovitz, contend that the summation of the Assistant United States Attorney was so prejudicial as to require a new trial. This court has often pointed out the high ethical duty and moral responsibility that an attorney prosecuting for the United States owes in the litigation of cases on behalf of the United States.[26] In United States v. Sober, 281 F.2d 244, 251 (3 Cir. 1960), in the concurring opinion it was stated: "Cases brought on behalf of the United States should be conducted with a dignity worthy of the client." While we cannot say that this high responsibility was met in this hard-fought case, we think that the prosecutor's remarks fell just short of that degree of impropriety requiring a new trial. When taken in context, the jury would not be led to believe that the prosecutor was arguing on any facts other than those which had been admitted into evidence during the course of the litigation. While we cannot condone the prosecutor's calling defense witnesses liars, these remarks were invited by the allegations of the defense counsel that the case had been instituted in bad faith.[27] Of course, "the prosecuting attorney should not have succumbed to a temptation"[28] to rebut in kind, but we cannot find that the remarks resulted in an unfair trial. We point out, however, that in our judgment the trial judge should have sternly rebuked both counsel and, if the conduct was persisted in, should have imposed sanctions upon them after the jury had gone to the jury room.

25. United States v. Shaffer, 291 F.2d 689 (7 Cir.) cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961); United States v. Clancy, 276 F.2d 617, 629–31 (7 Cir. 1960), rev'd on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); Leahy v. United States, 272 F.2d 487 (9 Cir. 1959), pet. for cert. granted, 363 U.S. 810, 80 S.Ct. 1246, 4 L.Ed.2d 1152 (1960), pet. for cert. dismissed, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961); Merritt v. United States, 249 F.2d 19 (6 Cir. 1957); United States v. $1058.00 in United States Currency, 210 F.Supp. 45 (W.D.Pa.1962), aff'd on other grounds, 323 F.2d 211 (3 Cir. 1963); United States v. Joseph, 174 F.Supp. 539 (E.D.Pa.1959), aff'd per curiam, 278 F.2d 504 (3 Cir.), cert. denied, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960).

26. United States v. Kravitz, 281 F.2d 581, 587 (3 Cir. 1960), cert. denied, 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961); United States v. Sober, 281 F.2d 244 (3 Cir.), cert. denied, 364 U.S. 879, 81 S.Ct. 167, 5 L.Ed.2d 101 (1960); United States v. Tucker, 267 F.2d 212 (3 Cir. 1959).

27. See Lawn v. United States, 355 U.S. 339, 359–60 at n. 15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

28. United States v. Sober, supra, 281 F.2d at 251 (concurring opinion).

## IV

### SUFFICIENCY OF THE EVIDENCE AND THE COURT'S CHARGE

█ Both Sigal and Rabinovitz have raised issues as to the sufficiency of the evidence and the court's charge to the jury under Count I, as well as to the admission of certain evidence against them. These questions are adequately covered by the opinion of the court below on the motion for a new trial [29] and we deem it unnecessary to discuss it here. We are of the view that the evidence shows a sufficient concert of action by and between the defendants-appellants to sustain the judgments of conviction against them.[30]

## V

### THE FAILURE TO RECORD THE VOIR DIRE EXAMINATION OF THE JURY.

Sigal contends that failure to record the voir dire examination in accordance with the Court Reporters' Act, 28 U.S.C. § 753, is reversible error. Subsection (b) of the Act provides that a reporter "shall attend at each session of the court * * and shall record verbatim by shorthand or by mechanical means: (1) all proceedings in criminal cases had in open court * * *." [31]

In order to comprehend the nature of the error alleged by Sigal it is necessary to understand the procedure ordinarily followed by the United States District Court for the Western District of Pennsylvania, where this case was tried.[32] In that court in the usual criminal case, examination of prospective jurors is not conducted in the courtroom but in the open assignment room. It is customary for a court reporter not to be present. In accordance with Rule 19 of the Rules of the United States District Court for the Western District of Pennsylvania, "Examination of Jurors Before Trial," the examination of the jurors is conducted by the Clerk of the Court or by a representative of the Clerk. The rules provide that certain stock questions be asked though the attorneys for the parties may request that additional inquiries be made.[33] A judge must, of course, rule on these additional inquiries.

---

29. 216 F.Supp. 306.

30. United States v. Sams, 340 F.2d 1014 (3 Cir. 1965), pet. for cert. filed, 33 U.S.L.W. 3296 (3/1/65) ; United States v. Minker, 312 F.2d 632 (3 Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963).

31. The United States as one of its contentions argues that the provisions of the Court Reporters' Act are inapplicable under the circumstances at bar because the jury was not selected in "open court". In my opinion, this argument does not merit serious consideration. It was the obvious intention of Congress to have voir dire examination of jurors recorded verbatim as the Legislative History of the Court Reporters' Act plainly indicates. See "Hearings before Subcommittee No. 4 of the Committee on the Judiciary of the House of Representatives, 78th Cong., 1st Sess., on H.R. 3142", (subsequently amended, reintroduced and reported as H.R. 3611), November 2, 1953, Serial No. 10, pp. 11, 12–19; "House Report No. 868 accompanying H.R. 3611, 78th Cong., 1st Sess.", pp. 1– 3; "Hearings before a Subcommittee of the Committee on the Judiciary of the United States Senate, 78th Cong., 1st Sess., on S. 620", pp. 6–10, 37 ; and "Senate Report No. 553 accompanying S. 620, 78th Cong., 1st Sess." Cf. Rule 24(a), Fed.R.Crim.Proc., 18 U.S.C. As to the impaneling of the jury being a stage of the trial no doubt can presently exist in view of the provisions of Rule 44, Fed. R.Crim.Proc., 18 U.S.C.

32. In two other cases in this district, the trial judges have set out, with some degree of completeness, the procedures followed in selecting a jury. See United States v. Stirone, 222 F.Supp. 507 (D.C. 1963) and United States v. Sams, 219 F. Supp. 164 (D.C.1963). In the Stirone case the issues of the absence of both judge and court reporter at the voir dire examination of prospective jurors are attempted to be raised under 28 U.S.C. § 2255. See Stirone v. United States, 341 F.2d 253 (3 Cir. 1965), the opinions in which are filed concurrently with those in this case. Compare Haith v. United States, 330 F.2d 198, 200 (3 Cir. 1964).

33. Rule 19 provides: "During the examination of jurors before trial, the Clerk, or the representative of the Clerk, conducting such examination shall state to

We are met at the outset with the question of whether or not Sigal himself or through his counsel, assuming arguendo that this be possible, waived the requirement of Section 753(b) that a court reporter record the voir dire examination. This question is difficult to determine because the record is insufficient in respect to the operative facts. Either a court reporter was present or a court reporter was not present. If a court reporter was present but was not recording and did not record the voir dire examination while it was being conducted, unless this was brought to the attention of Sigal or Sigal's counsel, it could scarcely be said that Sigal waived the provisions of Section 753(b). Sigal has pitched this portion of his appeal on the ground that the court reporter failed to record the voir dire examination and he does not allege either that a court reporter was present or was not present at the examination.

Sigal expressly waived the right to have the jury selected in the presence of a member of the court and, further, certified in a document attested by his counsel [34] that he was satisfied with the "procedure" employed in selecting the jury. G. M. Barr, the Deputy Clerk of Court, also signed a certificate respecting the procedure by which the jury was selected.[35] But I find no express waiver by Sigal or his counsel of the provisions of Section 753(b) in respect to the verbatim recording by shorthand or by mechanical means by a court reporter of the voir dire examination of the jury. The document signed by Sigal and attested by his counsel, states merely that "I do further certify that I am satisfied and agreeable to the procedure applied to the selection of the jury." See note 34, supra. I think that the ambit of this certification by Sigal and of its attestation by his counsel probably should be construed as being no broader than a consent to the judge's absence during the examination of the jurors and the procedure of having the questions propounded to the jurors by an assistant clerk rather than by the judge

the jurors the name and residence of each of the parties and the nature of the suit, and then the following questions, where appropriate, shall, inter alia, be put to each juror:

"(a) Do you know any of the parties?

"(b) Do° you know any of the attorneys in the case, or have they represented you or any member of your family?

"(c) What is your present occupation?

"(d) Who is your employer?

"(e) What is the occupation of your husband (wife), and who is his (her) employer?

"(f) Are you, or any member of your family, stockholders in any of the corporate parties?

"(g) Any other question, which in the judgment of the trial judge, * * * after application being made, shall be deemed proper."

34. The document reads as follows:

"STATEMENT OF SATISFACTION AS TO THE PROCEDURE APPLIED TO THE SELECTING OF JURY

"I do hereby waive the right to have the jury in this criminal proceeding selected in the presence of a member of the Court. I do hereby state and certify that the jury was selected in the open assignment room of the Court and that I was present with my counsel during the whole of the period of time applied in the selection of the jury. I do further certify that I am satisfied and agreeable to the procedure applied to the selection of the jury.

> Meyer Sigal
> Abe Rabinovitz
> Nathan Granoff
> Carl Schrello
> (Signatures of Defendants)

"Attest:
> John R. Gavin
> M. Barney Cohen
> Louis C. Glasso
> (Attorneys for Defendants)"

35. The statement is as follows:

"I hereby certify that the jury was selected in the open assignment room of the Court and that the defendant(s) Meyer Sigal—Carl Schrello—Abe Rabinovitz—Nathan Granoff and his (their) counsel Louis Glasso—John Gavin—Barney Cohen participated and were present during the whole period of time that the jury was selected.

"Date: Jan. 21—1963
> "G. M. Barr
> Deputy Clerk of Court"

or by counsel, as is contemplated by Rule 24(a) of the Federal Rules of Criminal Procedure. See Holtzoff, A Criminal Case in the Federal Courts, West's Federal Rules of Criminal Procedure and Criminal Code at 18–19 (1960); Orfield, Trial Jurors in Federal Criminal Cases, 29 F.R.D. 43 (1962). It should be noted also that counsel for Sigal expressed himself, as did counsel for the other defendants, as satisfied with the jury upon their return to the courtroom prior to counsels' opening statements.[36] Sigal may be presumed to have been present at that time though the record does not expressly show this.

The determination of the issue as to whether there was an implied waiver by Sigal is more difficult. He was represented by an experienced member of the Bar of Pennsylvania, accustomed to practice in criminal proceedings in the court below. The practice in that court of conducting the voir dire examination of prospective jurors in the open assignment room without the presence of a court reporter must, I think, have been well known to Sigal's counsel. As has been indicated, however, it is not known whether or not a court reporter was present on the occasion when Sigal's jury was drawn. It is known that the voir dire examination was not recorded. In the court below Sigal's counsel made no objection to any of the procedures employed in the selection of a jury. Sigal does not assert that he or his counsel was coerced in any way, or that he or his counsel was subjected to any kind of trick of subterfuge in respect to the drawing of the jury.

As indicated, the record upon this phase of the case is far from complete. As stated, I cannot tell from it whether a court reporter was present and failed to record the voir dire examination, or whether no reporter was present. Moreover, the record fails to show whether Sigal's then counsel, as distinguished from his present attorney, was aware or was unaware if a court reporter was present, and if a court reporter was present whether or not Sigal or his counsel knew that that reporter was not recording the examination as required by Section 753(b). If a court reporter was present and that reporter was not making a transcript, and Sigal or Sigal's counsel was unaware of that fact, as has been said, there scarcely could be an implied waiver of the provisions of the statute. The relevant facts to enable this issue to be determined can be determined only on remand.[37] As was stated in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, a waiver is "an intentional relinquishment or abandonment of a known right or privilege." The same authority states: "At all events, we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief." The importance to a defendant of the availability of a complete record on appeal becomes apparent where the mandatory provisions of the Court Reporters' Act are read in conjunction with Rule 52(b), Fed.R.Crim.Proc. which provide for the noticing of plain error. An appellate court may itself

36. "(Whereupon, at 4:07 o'clock P.M., Court came to order.)
   "(All counsel were present.)
   "(The Jury was seated.)
   "The Court: Are the defendants agreeable that the Jury be sworn?
   "Mr. Glasso: Yes, your Honor.
   "Mr. Gavin: Yes.
   "Mr. Cohen: Yes, your Honor.
   "The Court: The government agreeable that the Jury be sworn?

"Mr. Reich: Yes, your Honor.
"The Court: Swear the Jury."

37. I conclude that this procedure would be proper under 28 U.S.C.A. § 2106 which provides that appellate courts may "require such further proceedings to be had as may be just under the circumstances." Cf. United States v. Plattner, 330 F.2d 271 (2 Cir. 1964) (dictum); Brown v. United States, 314 F.2d 293 (9 Cir. 1963).

notice and review plain error in order to prevent a miscarriage of justice even though the point has not been raised on appeal. Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962). It is clear, therefore, that Rule 52(b) protects a defendant from the incompetence or inadvertence of his counsel. It would be inconsistent with the provisions of Rule 52(b) to rule that counsel by a failure to object to the absence of the procedure required by Section 753(b) waived this right on behalf of his client without a considered choice by Sigal himself.

Assuming there was no waiver in this case, must the judgment of conviction be reversed? Sigal asserts no specific ground of prejudice respecting the voir dire examination. His position is, baldly, that the provisions of the Court Reporters' Act are mandatory in order to allow a defendant's new counsel and the appellate tribunals an opportunity to examine the entire record in order to determine whether there has been any error in the conduct of the trial and if a defendant is denied this right he is entitled to a new trial.

Failures of court reporters to record various parts of proceedings have been before several courts of appeals with increasing frequency despite judicial admonition that the act is mandatory and must be complied with. See United States v. Plattner, 330 F.2d 271 (2 Cir. 1964). The case at bar is, however, one of first impression in this circuit. The Court of Appeals for the Fifth Circuit has examined the Court Reporters' Act several times and it is well settled in that circuit that a failure of a court reporter to record verbatim proceedings is not error per se,[38] although this position was not made crystal clear in Stephens v. United States, 289 F.2d 308 (5 Cir. 1961). However, where a defendant is able to allege some specific error, the Court of Appeals for the Fifth Circuit has held that the lack of a transcript prevents the court from determining whether there had been error and whether or not the error was harmless. Washington v. United States, 327 F.2d 793 (5 Cir. 1964); Fowler v. United States, 310 F.2d 66 (5 Cir. 1962). In Parrott v. United States, 314 F.2d 46 (10 Cir. 1963), the defendant argued that there had been prejudicial error in the conduct of the voir dire which had not been recorded by the court reporter. The government admitted the impropriety, but argued that it was harmless error. The Court of Appeals for the Tenth Circuit reversed the conviction because it was unable to determine without the full transcript whether the error was harmless or prejudicial. Cf. United States v. Taylor, 303 F.2d 165 (4 Cir. 1962).

The case that supports the defendant's position most strongly is Brown v. United States, 314 F.2d 293 (9 Cir. 1963) in which the defendant's sole allegation of error was the failure to record the summation by the prosecutor. The court held, despite a vigorous dissent by Judge Duniway, that while the judgment of conviction would not be reversed, it would be vacated and remanded in order to allow the court below the opportunity to reconstruct the record to determine whether there had been prejudicial remarks made by the prosecutor. In his concurring opinion, Judge Pope pointed out that if there had been plain error in the summation, whether objected to or not, there might have to be a reversal. Judge Pope concluded, however, that the defendant could be assured a fair trial by a reconstruction of the record. I do not know what position that Court would have taken had it been thought impossible in the cited case to reconstruct the

38. Burns v. United States, 323 F.2d 269 (5 Cir. 1963), cert. denied, 376 U.S. 907, 84 S.Ct. 660, 11 L.Ed.2d 606 (1964); Addison v. United States, 317 F.2d 808 (5 Cir. 1963), cert. denied, 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964); Strauss v. United States, 311 F.2d 926 (5 Cir.), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963).

record. In the case at bar, I think reconstruction is an impossibility.

Based on these cases, the current view seems to be that a conviction cannot be reversed unless the defendant has alleged some prejudicial error in the conduct of the proceedings. This view is inconsistent with the reasoning on which the Supreme Court rested in its recent decision in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). In Hardy, an indigent defendant's attorney requested the entire transcript at government expense in order to determine whether there had been any plain error in the trial of the cause. The government had contended that he was entitled only to those portions of the transcript which related to the alleged error. Since he was not the counsel that had tried the matter, the majority of the Court held that he was entitled to the entire transcript. Mr. Justice Douglas, speaking for the Court, stated, "But when, as here, new counsel represents the indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript? His duty may possibly not be discharged if he is allowed less than that. The right to notice 'plain errors or defects' is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended." At least four members of the Court, however, felt that the entire transcript must be made available regardless of whether or not the counsel on appeal was the same as counsel at the trial. The majority of the Court did not disavow the position of the concurring Justices, but merely decided the case on the more narrow ground. The separate concurring opinion of Mr. Justice Clark seemed to indicate that to him the problem would be solved if counsel on appeal was the same as counsel at the trial.

It is clear that the Supreme Court relied on the fact that the mandate of the Court Reporters' Act would be complied with and that any other result in Hardy would create too great a distinction between the indigent appeal and the nonindigent appeal in which the defendant can obtain the transcript by paying for it.

In the case at bar the counsel representing Sigal on appeal is a different attorney than he who tried the case in the court below. However, in a nonindigent appeal, it would appear that under the circumstances at bar nothing should turn on this fact. Otherwise, a defendant could get the advantage of a failure to conform with the provisions of Section 753(b) merely by changing attorneys. This would not constitute a sound ground for distinction.

The foundation upon which Hardy rests is that counsel should have the opportunity to read the entire transcript in order to detect possible plain error. In order to be able to detect plain error, it is crucial that the counsel representing the appellant have the transcript. Obviously, if counsel did not raise an objection at the trial, the possible error is not impressed in his mind and only the record will reveal it. The provisions of the Court Reporters' Act "are designed to preserve a correct and authentic record of criminal proceedings free from the infirmities of human error and they provide a safeguard to which not only the court but also the defendant is entitled in the preservation of his rights." United States v. Taylor, 303 F.2d 165, 169 (4 Cir. 1962). Without the aid of a transcript, counsel can only allege those errors that he remembers or thinks he remembers as having occurred. When the Act is complied with, counsel is not forced to rely on his memory. Nor would this court be forced to affirm or reverse a conviction on the memory of counsel. It is a cardinal rule of appellate practice that the facts are those found in the record and not those found in the minds of the attorneys. I think that in accordance with Rule 52(b), when a federal court is asked to affirm a conviction, it has the duty not to affirm unless it can ascertain from a fair reading of the

record that no gross miscarriage of justice will occur if it does so. It cannot be known in this case whether there has been such prejudicial error. Congress has provided, if the Court Reporters' Act be complied with, that a court need not guess.

The defendant Rabinovitz has not raised this issue as a ground for reversal. However, he was jointly indicted and convicted with Sigal. On this aspect of the case I can perceive no possible distinction between either defendant. Therefore, under Rule 52(b) Rabinovitz should be treated as being in the same position on this aspect of the appeal as Sigal.

The judgments of conviction should be vacated and the cause should be remanded to the district court to supplement the record, note 37, supra, in order to determine whether or not there was an effective waiver by either or both of the defendants. In that event, if it is determined that there was no effective waiver, the court below should be directed to reverse the convictions and to order a new trial. In the event that the court below found a valid waiver, it should be directed to reinstate the judgments of conviction.

In the future the provisions of 28 U.S.C. § 753(b) should be strictly adhered to. I appreciate the fact that the court below as well as other district courts in this circuit bear a heavy burden of pending litigation, but I cannot conclude that this can serve as a sound basis for disregarding the mandate imposed on United States district courts by Section 753(b), Title 28 U.S.C. I reiterate that the legislative history of the statute makes it clear that the Court Reporters' Act was enacted for the protection of the parties and of the court and to the end that justice may be served by having available an adequate record of what has transpired in a criminal or other proceeding.[39]

---

39. See the legislative history set out in note 31, supra.